**Patrick Logan MONTGOMERY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 1090–88, 1091–88.**

Court of Criminal Appeals of Texas, En Banc.

May 30, 1990.

Rehearing Granted Feb. 20, 1991.

On Rehearing June 19, 1991.

---

R.K. Weaver, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty., and Patricia Poppoff Noble, Celia Barr and Karen Becak, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

A jury found appellant, Patrick Logan Montgomery, guilty of two counts of indecency with a child and assessed a sentence of ten years' confinement for each offense.

He appealed. The Dallas Court of Appeals held that the trial court did not abuse its discretion in allowing the jury to hear testimony which appellant claimed constituted improper proof of an extraneous offense. *Montgomery v. State*, 760 S.W.2d 323, 324–325 (Tex.App.—Dallas 1988). We granted appellant's petition to review this holding [1] and now affirm.

During the trial of this case, over appellant's objection, the judge allowed the State to introduce testimony that appellant had on several occasions paraded around in front of his minor daughters, the complainants, in the nude with an erection. Before the Court of Appeals, appellant argued that the trial court erred when it allowed the State to introduce this testimony, arguing that:

> "It is well settled that an accused may not be tried for some collateral crime or for being a criminal generally. For this reason, the courts have generally prohibited the introduction of testimony about extraneous offenses ...
>
> "The extraneous offense proffered by the State was prejudicial to the Defendant and was not material or relevant. The extraneous offense should not, therefore, have been admitted in the trial of this cause."

Appellant, citing *Plante v. State*, 692 S.W.2d 487 (Tex.Cr.App.1985), and *Coleman v. State*, 577 S.W.2d 695 (Tex.Cr.App. 1978), insisted that the aggrieved evidence, to be admissible, must fall into one of the "six generally accepted exceptions to the rule against admission of extraneous offenses." Appellant specifies these "generally accepted" exceptions as:

> "1) [to] show the context in which the criminal act occurred ...; 2) to circumstantially prove identity where the State lacks direct evidence on this issue; 3) to prove scienter, where intent or guilty knowledge cannot be inferred from the act itself; 4) to show malice or state of mind where malice is an essential element of the State's case and it cannot be inferred from the criminal act; 5) to show the accused's motive; or 6) to refute a defensive theory raised by the accused."

Because the aggrieved testimony did not fit snugly into any exception, appellant argued to the Court of Appeals that the trial court erred when it allowed the jury to hear this testimony.

Before this Court, appellant repeats the argument he made before the Court of Appeals and prays that we reevaluate the evidence to find that the trial court erred when it permitted the aggrieved testimony to go before the jury. For the reasons below, we decline appellant's invitation.

## THE TRIAL COURT'S ROLE

Initially, we reject appellant's invocation of the common-law's mechanistic rules which tended to favor exclusion of evidence. Appellant was tried after adoption of the Texas Rules of Criminal Evidence. The new rules favor the admission of all logically relevant evidence for the jury's consideration. See *Crank v. State*, 761 S.W.2d 328, 342 n. 5 (Tex.Cr.App.1988). Finding a piece of evidence to be "relevant" is the first step in a trial court's determination of whether the evidence should be admitted before the jury as "[a]ll relevant evidence is admissible.... Evidence which is not relevant is not admissible." Tex.R.Crim.Evid. 402. "Relevant evidence means having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Crim.Evid. 401; Fed.R.Evid. 401. "Relevancy is not an inherent characteristic of any item of evidence but exists as a relation between an item of evidence and a matter properly provable in the case." Advisory Committee's Note to Fed.R.Evid.

---

**1.** We also granted appellant's petition to review the Court of Appeals' holdings that appellant did not properly preserve error, if any, for appellate review. *Montgomery,* 760 S.W.2d at 329. Upon further consideration, however, we have determined that the granting of the petition for this purpose was improvident in that the error was properly preserved.

401.[2] As this Court said in *Waldrop v. State*, 138 Tex.Crim. 166, 133 S.W.2d 969 (1940):

> "Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained would logically influence the issue. Hence it is relevant to put in evidence any circumstance which *tends* to make the proposition at issue more or less probable." 133 S.W.2d at 970 (emphasis added).

See also *Brown v. State*, 757 S.W.2d 739, 743 (Tex.Cr.App.1988) (McCormick, P.J., concurring); *Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Cr.App.1985); *Plante*, 692 S.W.2d at 491. Thus, evidence merely tending to affect the probability of the truth or falsity of a fact in issue is logically relevant. Moreover, the evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence. See Advisory Committee's Note to Fed.R.Evid. 401 ("The fact to be proved may be ultimate, intermediate or evidentiary; it matters not so long as it is of consequence in the determination of the action").

**2.** Rules 401, 402 and 403 of the Texas Rules of Criminal Evidence are identical in all material aspects to the same numbered rules in the Federal Rules of Evidence from which they were derived. Although this Court is not bound by lower federal court decisions, when the Texas Rule duplicates the Federal Rule, greater than usual deference should be given to the federal court's interpretations. See *Campbell v. State*, 718 S.W.2d 712, 716 (Tex.Cr.App.1986); *Rodda v. State*, 745 S.W.2d 415, 418 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd); *Cole v. State*, 735 S.W.2d 686, 690 (Tex.App.—Amarillo 1987, no pet.) The State Liaison Committee, appointed by the Legislature in 1981 to propose codified rules of evidence, consistently considered the Federal Rules, although it rejected verbatim adaption. Caperton and McGee, *Background, Scope and Applicability of the Texas Rules of Evidence*, 20 Hous.L.Rev. 49, 51 (1983).

**3.** Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is not admissible."

In deciding whether a particular piece of evidence is relevant, a trial court judge should ask "would a reasonable person, with some experience in the real world believe that the particular piece of evidence is helpful in determining the truth or falsity of any fact that is of consequence to the lawsuit." See *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir.1976) (rule of thumb is to inquire whether a reasonable man might believe probability of truth of consequential fact to be different if he knew of proffered evidence, quoting Weinstein & Burger, *Weinstein's Evidence*, ¶ 401[07], at 401–27 (1985)). If the trial court believes that a reasonable juror would conclude that the proffered evidence alters the probabilities involved to any degree, relevancy is present.

From Tex.R.Crim.Evid. 401, the trial court next moves to Tex.R.Crim.Evid. 402[3] to decide whether the logically relevant evidence should be admitted. Under the rules of evidence, once the proponent of an item of evidence shows that the evidence is logically relevant to some issue in the trial under Rule 401, it is admissible under Rule 402 unless the opponent of the evidence demonstrates that it should be excluded because of some other provision, whether constitutional, statutory, or evidentiary.[4]

**4.** There will be occasions when the trial court judge must detour from Rule 401 to Tex.R.Crim. Evid. 104 before moving to Rule 402. For example, and contrary to assertions made in appellant's brief on the merits, in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court in an unanimous opinion, held that Rule 104(b) applies to all preliminary issues of relevancy including the admission of extraneous offenses under Fed.R.Evid. 404(b). Rule 104(b) provides that "when relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence to support a finding of fulfillment of the condition." The Supreme Court concluded that evidence of an extraneous offense "should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." 108 S.Ct. at 1499. That is, if a hypothetical juror could reasonably conclude that the defendant committed the extraneous offense and that offense is otherwise admissible, the judge shall admit it into evidence. See 108 S.Ct. at 1499. Accord *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (relevant extraneous offense evidence admissible if juror

In the case before us, appellant claims that the evidence constitutes proof of an extraneous offense and that its probative value does not outweigh its prejudicial affect. Although not cited in appellant's brief on the merits appellant attempts to invoke Tex.R.Crim.Evid. 404(b). That Rule provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction."

The exclusion of other wrongs evidence under Rule 404 is based, not on its lack of probative value, but rather on its unfair prejudicial effect. See Blakely, *Article IV: Relevancy and Its Limits*, 20 Hous.L.Rev. 151, 190 (1983). The Advisory Committee's Note to Fed.R.Evid. 404(b) states that the Rule offers "no mechanical solution" to excluding or admitting evidence of other wrongs committed by the defendant. Rather, the Committee indicated that the trial court should assess such evidence under the usual rules for admissibility: "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of other factors appropriate for making decisions of this kind under Rule 403."[5] In short, Rule 404(b) is simply a specific codification for a general balancing determination under Rule 403. It must also be remembered that the enumerated exceptions to Rule 404(b)—proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or acci-

dent—are "neither mutually exclusive nor collectively exhaustive." Cleary, McCormick On Evidence, section 190 at 558 (3d Ed.1984). "There are numerous other uses to which evidence of criminal acts may be put." *Id.*

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." It is with the adoption of this rule that Texas evidentiary law has altered. Under the former common-law rules in Texas, the proponent of a piece of evidence was required to show that the probative value of his offered evidence outweighed its prejudicial effect. See *Bush v. State*, 628 S.W.2d 441, 444–445 (Tex.Cr.App.1982). See also *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Cr.App.1983). Under the new rules, however, there has been a alteration in focus; now it is the opponent's burden to not only demonstrate the proffered evidence's negative attributes but to show also that these negative attributes *"substantially outweigh"* any probative value. *Crank*, 761 S.W.2d at 342 n. 5; *Rodda v. State*, 745 S.W.2d 415, 417–18 (Tex.App.— Houston [14th Dist.] 1988, pet. ref'd). Judge Clinton observed in *Crank* that "[t]he plain language of Rule 403 shifts the focus somewhat from the test enunciated in *Williams [v. State*, 662 S.W.2d 344, 346 (Tex.Cr.App.1983)] and its progeny. The approach under Rule 403 is to admit *all relevant evidence* unless the probative value is *substantially* outweighed by the danger of unfair prejudice to a defendant." 761 S.W.2d at 342 n. 5 (emphasis in the original).

Most objections based upon the balancing required under Tex.R.Crim.Evid. 403 attack the prejudice to the aggrieved party (as

could reasonably conclude that the act occurred and the defendant was the actor notwithstanding that the defendant has been acquitted of having committed the extraneous offense).

**5.** The Supreme Court agrees, finding that "with respect to permissible uses for such evidence,

the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion or waste of time." *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988), citing Advisory Committee's Note to Fed.R.Evid. 404(b).

appellant does in the case before us). It must be remembered, however, that virtually all evidence proffered by a party to a lawsuit will be prejudicial to the opposing party. In *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980), the court explained:

"All evidence introduced against a defendant, if material to an issue in the case, tends to prove guilt, but it is not necessarily prejudicial in any sense that matters to the rules of evidence.... Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.... The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.... When material evidence has an additional prejudicial effect, Rule 403 requires the trial court to make a conscientious assessment of whether the probative value of the evidence on a disputed issue in the case is substantially outweighed by the prejudicial tendency of the evidence to have some other adverse effect upon the defendant." 618 F.2d at 943.

As such, only "unfair" prejudice provides the basis for exclusion of relevant evidence. See *United States v. Jamil*, 707 F.2d 638, 644–645 (2nd Cir.1983) ("prejudice" does not constitute showing of "unfair" prejudice). See also Advisory Committee's note to Fed.R.Evid. 403 ("Unfair" prejudice means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.")

## THE APPELLATE COURT'S ROLE

Concomitant with adoption of the Texas Rules of Evidence, there should be a corresponding reluctance on the part of an appellate court to reverse trial court decisions which admit or exclude evidence. Courts and commentators universally recognize that with the enactment of Federal Rule 403 there was a conscientious decision to give the trial court a considerable freedom in evaluating proffered evidence's probative value in relation to its prejudicial effect. See *United States v. Robinson*, 560 F.2d 507, 512–516 (2d Cir.1977) (applying "arbitrary-irrational" standard of judicial discretion); *United States v. Wyers*, 546 F.2d 599, 603 (5th Cir.1977) (rule well established that trial court's rulings as to relevancy and materiality not disturbed absent clear abuse of discretion); *United States v. Cohen*, 544 F.2d 781, 786 (5th Cir.1977) (same) cert. denied, 431 U.S. 914, 97 S.Ct. 2175, 53 L.Ed.2d 224 (1977). See also *Construction Ltd. v. Brooks–Skinner Bldg.*, 488 F.2d 427, 431 (3d Cir.1973) (if sitting as trial judge, appellate court might well have concluded that prejudicial nature of evidence outweighed probative worth; appellate court, however, could not say that action of the trial court constituted abuse of discretion).[6] Opinions from this Court have held the same. See, e.g., *Marras v. State*, 741 S.W.2d 395, 404 (Tex.Cr. App.1987); *Stone v. State*, 574 S.W.2d 85, 89 (Tex.Cr.App.1978).

The reason that appellate courts must afford a trial court great discretion in its evidentiary decisions is not based exclusively upon the wording of Rule 403.[7] Appel-

---

**6.** Commentators are in general agreement that appellate courts should afford trial courts the discretion to admit and/or exclude evidence from the jury's consideration. See generally Herasimchuk, *The Relevancy Revolution in Criminal Law: A Practical Tour through the Texas Rules of Criminal Evidence*, 20 St. Mary's L.J. 737, 782 n. 113 (1989); Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal*, Section 403.1 at 91 n. 15 (Texas Practice 1988).

**7.** Indeed, Tex.R.Crim.Evid. 403, like its federal counterpart, provides that the trial court "may" exclude evidence under that rule, implying that

the trial court is not required to do so. As originally drafted, Rule 403 of the Federal Rules of Evidence read:

"(a) EXCLUSION MANDATORY. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury.
"(b) EXCLUSION DISCRETIONARY. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

late courts, bound by cold appellate records, must afford the trial courts discretion because the trial court judge is in a superior position to evaluate the impact of the evidence. The trial judge sees the witnesses, the defendant, the jurors and counsel; he alone is able to witness the participants' mannerism and reactions. As the court in *Robinson* opined: "[W]e cannot weigh on appeal ... the intonation and demeanor of the witnesses preceding the testimony in issue ... nor can we determine the emotional reaction of the jury to other pieces of evidence ... or judge the success of impeachment by cross-examination through observation of the jurors." 560 F.2d at 512–516.

The State, in its brief on the merits, directs this Court's attention to *United States v. Long*, 574 F.2d 761 (3rd Cir.1978), as providing the proper standard of appellate review for these cases. There the Federal Appellate Court concluded:

"If judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal....

"In view of ... the use of 'may' in the final version of Rule 403, it is manifest that the draftsman intended that the trial judge be given a very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise because of a differing view of the highly subjective factors of (a) the probative value, or (b) the prejudice presented by the evidence. This inference is strengthened by the fact that the Rule does not establish a mere imbalance as the standard, but rather requires that the evidence 'may' be barred only if its probative value is 'substantially' outweighed by prejudice."

We agree; the trial court should be allowed the discretion to exclude or admit evidence before the jury and an appellate court should not set aside the trial court's rulings absent a showing in the record that the trial court has abused that discretion. *Marras*, 741 S.W.2d at 404.

In an early opinion from this Court, there was an attempt to define "abuse of discretion." Remarkably, the Court wrote:

"We are cited to many cases of the different states of the Union relative to what is meant by an 'abuse of discretion' and while not lending itself to an absolute measuring stick by which such abuse could be understood, the opinions seem to be in fair agreement that an abuse of discretion usually means doing something differently from what the reviewing authority would have felt called upon to do." *Williams v. State*, 159 Tex.Crim. 443, 265 S.W.2d 92, 95 (1954).

The *Williams'* Court cited no such authority for its proposition and "abuse of discretion" has never been so defined in any other jurisdiction. If this were the test,

Both the Department of Justice and the Senate Judiciary Committee rejected this preliminary draft. The Department opposed the rule's "absolute standard of inadmissibility." *The Department of Justice Report* 9 (1971) (reprinted in Weinstein and Burger, *Weinstein's Evidence*, ¶ 403[01] at 403–7 n. 4 (1985)). It determined that such a standard would "require reversal on appeal whenever an appellate court disagreed with the trial court's exercise of discretion." Id. The Committee concluded that "this matter is best left to the discretion of the trial judge." Id. The Chairman of the Senate Judiciary Committee was more adamant in his reasons for rejection:

"My difficulty lies with the failure of Subdivision (a) to see the ultimate issue in terms that emphasize the sound discretion of the trial judge and to uphold his ruling on appeal, absent abuse of discretion, in what will always be a balancing situation. I see no reason to purport to draw a hard and fast line that no one will be able to trace in practice. The adoption of the present draft will provide criminal defendants with another standard ground for appeal and lead to needless reversals and retrials in criminal cases." Letter of Chairman of the Senate Judiciary Committee to Standing Committee on Rule of Practice and Procedure (August 12, 1971) (reprinted in Weinstein and Burger, *Weinstein's Evidence*, ¶ 403[01] at 403–8 n. 4 (1985)).

Sentiments such as these lead to the rule's current wording that "recognizes the desirability of discretionary power to exclude evidence, but attempts to limit the exercise of discretion by stating what policy considerations that are to justify its use." Wright and Graham, *Federal Practice and Procedure*, Section 5212, at 256–57 (1977).

then the trial court judge would have virtually no discretion to do other than that which the appellate court would do. The appellate court would then be the "superior trial judge"; such is the antithesis of abuse of discretion, not its embodiment. A more appropriate test for a determination of whether the trial court abuses its discretion is aptly stated by the Texas Supreme Court:

> "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. Another way of stating the test is whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1985), cert. denied 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986) (citations omitted).

Thus, judicial rulings will be affirmed if the trial court follows the appropriate analysis and balancing factors, though the appellate court might disagree with the weight given to those individual factors. In short, a trial court judge is given a "limited right to be wrong," so long as the result is not reached in an arbitrary or capricious manner. See Rosenberg, *Judicial Discretion*, 38 Ohio Bar 819, 823 (1965).

## APPLICATION OF THE LAW TO THE FACTS

Given that the trial court is granted great discretion in its ability to admit or exclude evidence, we now turn to this case to determine if the record demonstrates that the trial court judge abused her discretion. The two indictments under which appellant was tried allege that he "knowingly and intentionally engage[d] in sexual contact with [the two complainants] ... then younger than 17 years and not then the spouse of [appellant], by contact between the hand of [appellant] and the genitals of [the] complaint[s], with the intent to arouse and gratify the sexual desire of the [appellant]." Thus it was incumbent upon the State to prove, beyond a reasonable doubt, that appellant had contact with the two complainants and that this contact was done for his sexual gratification.

Linda Lou Rockwell, appellant's ex-wife, was the State's second witness to testify at the trial. Upon direct examination, Rockwell testified that appellant frequently walked around the house in front of his children while he was unclothed. She stated that at these times he had an erection. This testimony was elicited along with and after she had testified concerning appellant's other conduct in front of his children: She once found one of the complainants in the shower with him. She observed that when the younger of the two complainants kissed appellant, the girl's mouth was open and she inserted her tongue. Rockwell had observed appellant bathe the little girls. At one time, she heard appellant discuss their genitals; he referred to one of the complainants and said she had a "fat pussy." At other times after the girls bathed appellant would ask the children if they had "washed their slits," referring to their vaginal area. At other times, appellant would say to the girls, "You and I were meant for each other"; "Give me your hot love"; "My lips were made for kissing"; and "Press my hot lips." [8]

It is clear to us that the aggrieved testimony, when consider in the context of the other evidence at trial is relevant; it pro-

---

**8.** The Court of Appeals' majority opinion determined that the trial court could have admitted this testimony because "the evidence served its proper function of revealing the familial relationship which provided the context of the charged offense." *Montgomery*, 760 S.W.2d at 325. The Court of Appeals then concluded that "the probative value of the extraneous offense outweighed any possibility of prejudice." 760 S.W.2d at 325. This holding implies that the majority undertook to reevaluate the evidence—something it should not have done. The Court of Appeals should have determined if the trial court abused its discretion in admitting the evidence before the jury.

vides the "small nudge" toward proving appellant's sexual motive if he touched the complainants. Having found the evidence to be relevant we must determine if the record reveals that the trial court abused its discretion in choosing to admit the evidence.

There are a number of possible factors that the judge could have considered in her determination to permit the jury to hear this testimony: 1) The trial court could have considered the inherent circumstantial nature of the evidence tending to prove that appellant committed the charged offenses with the intent to sexually arouse himself. The offense involved in this case is an improper touching with a hand as opposed to penetration with a sexual organ. The manner appellant acted around his own children was the only proof of appellant's possible sexual motive if the touching did in fact occur. 2) The court could have considered the State's burden of proving appellant's intent beyond a reasonable doubt when there is no other available evidence to prove sexual gratification. This is coupled with the State's having to sustain appellate challenges to the sufficiency of evidence where the Court of Appeals is required under Texas law to consider reasonable hypothesis inconsistent with guilt. Without some evidence of appellant's motives, the possibility that any touching was done innocently exists as an outstanding hypotheses. 3) Also, the trial court could have considered the age of the complainants. At the time of the trial, the two girls were seven and ten years old. Appellant challenged their competency to testify at trial and it would have been reasonable for the trial court to conclude that the young girls would not be able to relate that appel-

lant's touching their vaginal areas was done with the specific intent to cause his sexual arousal. It should be remembered that appellant was solely responsible for the welfare of his daughters at the time of the offense and the record demonstrates that he assumed responsibility for bathing the children. Absent the above testimony, it is possible that any touching was done innocently making the need for the evidence greater. Given these factors, we cannot say that the trial court judge abused her discretion in allowing the jury to hear the aggrieved testimony. Another trial court judge may have done differently and could have easily excluded the testimony, but we, in our role as an appellate court, cannot say that the trial court abused its discretion.[9]

Exemplary of an appellate court exceeding its proper role as an appellate court and not allowing the trial court to use its discretion to admit or exclude evidence is the Court of Appeals' dissenting opinion in this case which appellant adopts in his brief on the merits as being a correct statement of the law.[10] The dissenting Justice would have omitted the aggrieved testimony from the jury's consideration because

"[a]lthough the great majority of society would doubtless condemn such a display of nudity, we must acknowledge that a significant segment adamantly argues that there is nothing wrong with nudity. We also know that primitive societies around the world have accepted nudity as normal. In final analysis, the brand of 'unnatural' reflects no more than the contemporary attitued (sic) of the majority in this corner of the world."

9. There is a justified concern that evidence may be unduly prejudicial to the defendant but the rules of evidence offer protection:

"[T]he protection against unfair prejudice [associated with the introduction of extraneous offense evidence under Fed.R.Evid. 404(b)] emanates ... from four sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether

the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, see Advisory Committee's Note on Fed.R.Evid. 404(b) ...; and fourth, from Federal Rule of Evidence 105, which provides that he trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *Huddleston*, 108 S.Ct. at 1502) (footnote omitted).

10. Only the majority opinion was published in this case.

However the Justice would have weighed the factors in *his* determination to admit or exclude the evidence is superfluous to a determination of whether the trial court abused its discretion. As stated previously, "the mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer,* 701 S.W.2d at 242. Moreover, even if the dissenting Justice were sitting as the trial court judge in this case, his decision to exclude the evidence because he accepted nudity as the norm would be an incorrect standard. If a particular trial court judge could determine that he, *personally,* does not find a logical connection between the proffered evidence and the fact in issue, he is bound to admit the evidence if he believes that a "reasonable man" might conclude that the evidence is relevant. See *United States v. 478.34 Acres of Land,* 578 F.2d 156, 160 (6th Cir.1978) (holding that judge himself need not be convinced of probative value of evidence if he or she determines that jury reasonably could so find). See generally Weinstein and Burger, *Weinstein's Evidence,* ¶ 401[09] at 401–63 (1985).

The dissent also argues that the *source* of the aggrieved testimony limits its usefulness, writing that "it is quite obvious" the appellant's ex-wife could not be "considered an objective, unbiased witness." The dissent deems the witness's motive— acrimony stemming from the parties' divorce—"drastically reduces the value of the extraneous offenses as proof that the indicted offense actually occurred." In making this credibility argument, an appellate court judge steps way out of line.

It would have been improper for the trial court to omit relevant testimony on the basis that she did not believe the particular witness. See *United States v. Thompson,* 615 F.2d 329, 333 (5th Cir.1980). Accord *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) ("In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court *neither weighs credi-*

*bility* nor makes a finding that the Government has proved the conditioned fact by a preponderance of the evidence." 108 S.Ct. at 1501 (emphasis added).) As put by Professor Wright:

"[I]t seems relatively clear that in the weighing process under Rule 403 the judge cannot consider the credibility of the witnesses. In the first place, credibility is a question for the jury; to permit the judge to exclude evidence on the grounds that he thinks it incredible would be a remarkable innovation and may even be a violation of the right of trial by jury. In the second place even if the jury were not involved, in order to assess the credibility of a witness the judge would have to hear his testimony so as to assess his demeanor, know what evidence is available to corroborate his testimony, and perhaps even look at the impeaching evidence that the opponent plans to introduce. Rule 403 presupposes that the judge can determine the admissibility by assessing logical inferences at the time it is offered. If the judge were to assess credibility as well, it is difficult to see how this could be done without first hearing nearly the entire trial." Wright and Graham, *Federal Practice And Procedure,* Section 5214, at 265–66 (1977) (footnotes omitted).

When the appellate justice determined that he would have omitted the aggrieved testimony on the basis of the witness's lack of credibility he doubly erred. First, he was in no position to usurp the functioning of the jury that could see the witness and make its own credibility assessment; and second, even the trial court judge should not have weighed such factors in a determination to exclude evidence.

The only proper basis for the trial court to exclude the evidence in this case is that provided in the Texas Rules of Evidence and the only proper basis for an appellate court to reverse a trial court's decision is when the record demonstrates that the trial court has abused its discretion. The record before us does not demonstrate that the trial court judge abused her discretion when she allowed the jury to hear that

appellant appeared nude with an erection in front of his children. We therefore affirm the judgment of the trial court and the majority opinion of the Court of Appeals.

BERCHELMAN, J., not participating.

CLINTON, Judge, dissenting.

Without subscribing to it word for word, I agree with much the majority has to say with regard to operation of the new Texas Rules of Criminal Evidence. I particularly embrace the majority's observation that, rather than to adopt a general rule of exclusion of evidence of extraneous misconduct, Article IV contemplates that, if relevant to some issue of consequence to the case, extraneous misconduct is ordinarily admissible. Tex.R.Cr.Evid., Rules 401 & 402. The trial court may exclude such evidence "if its probative value is substantially outweighed by the danger of unfair prejudice...." Tex.R.Cr.Evid., Rule 403. An exception to the general rule of admissibility of such evidence is extraneous misconduct admitted to raise no more than an inference of character conformity—what prior to the advent of the new rules we referred to as "propensity evidence." *Boutwell v. State,* 719 S.W.2d 164, at 177 (Tex.Cr.App.1986) (Opinion on State's motion for rehearing). See Tex.R.Cr.Evid., Rule 404(b).

Indeed, I had thought that recent decisions of this Court prior to applicability of the new rules had already begun to migrate away from a "general rule" of inadmissibility of extraneous misconduct evidence to one of admissibility of any such evidence that is relevant to a specific, material issue in the case, not proffered for its character conformity value, the probativeness of which outweighs any potential for prejudice. E.g., *Morgan v. State,* 692 S.W.2d 877, at 879 (Tex.Cr.App.1985); *Boutwell v. State,* supra, at 171–72 (Opinion on original submission); *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1983). The only change in the new rules is that "Rule 403 shifts the focus somewhat ... to *admit relevant evidence* unless the probative value of that relevant evidence is *sub-*

*stantially* outweighed by the danger of unfair prejudice to a defendant." *Crank v. State,* 761 S.W.2d 328, at 342, n. 5 (Tex.Cr. App.1988).[1]

I cannot subscribe, however, to the majority view of the proper role of an appellate court in all this. Particularly, I cannot accept the notion that a trial court's discretion to admit relevant evidence even over an objection that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," includes a "limited right to be wrong." Maj. op. at 380. That is essentially to say, it seems to me, that appellate courts have no authority to review a trial court's application of Rule 403, supra. Assuming appellate courts are rigorous in their review of the question whether proffered extraneous misconduct evidence has a logical "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence[,]" Rule 401, supra, I agree appellate courts should pay great deference to a trial court's decision, pursuant to Rule 403, supra, that the probative value of relevant evidence outweighs its potential for unfair prejudice or confusion of issues. In my view, however, the facts of this very case demonstrate such deference must have limits.

The majority takes pains to set out the minutiae of appellant's extraneous misconduct that, ironically, comprised the bulk of the State's evidence in the 300–odd page transcript of the guilt phase of trial. Then, in its self-styled application of the law to the "facts," the majority concludes the State needed these extraneous matters because it was "the only proof of appellant's possible sexual motive if the touching did in fact occur." Maj. op. at 381. The majority continues:

"Without some evidence, of appellant's motives, the possibility that any touching was done innocently exists as an outstanding reasonable hypotheses. * * * It should be remembered that appellant

1. Emphasis is in the original. All other emphasis supplied unless otherwise indicated.

was solely responsible for the welfare of his daughters at the time of the offense and the record demonstrates that he assumed responsibility for bathing the children. Absent the [extraneous misconduct evidence], it is possible that any touching was done innocently making the need for the evidence greater. Given these factors, we cannot say that the trial court judge abused her discretion in allowing the jury to hear the aggrieved testimony."

*Id.* I agree that a Rule 403 evaluation of the balance of probativeness against prejudice ought properly to take the form of an inquiry into how much the State needs the relevant extraneous misconduct, either to prove its case in the first instance, or to rehabilitate it after damaging defensive evidence. See *Morgan v. State*, supra, at 879–80, nn. 2, 3 & 4, and at 882, n. 7; *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978). What is patently incorrect is the majority's assertion that in this case, other than the extraneous misconduct, the State could produce no evidence that appellant acted with the requisite intent to arouse and gratify his sexual desire. Here the State produced abundant evidence of that intent. Appellant was tried simultaneously for sexual contact on two separate occasions with two of his three daughters. The circumstances of the offenses themselves, as related by a Department of Human Services caseworker, and by the children themselves, are ample to show that if any touching occurred at all, manifestly it was with the intent to arouse and gratify appellant's sexual desire. Denying he touched his daughters at all, at no time did appellant try to show that any contact had been inadvertent or without lascivious intent.

The caseworker testified pursuant to Article 38.072, V.A.C.C.P. She related that appellant's eldest daughter told her that appellant had touched her in her genital area. Appellant's second oldest daughter was somewhat more graphic in her description to the caseworker:

"Q. Did you ask her whether or not she had any secrets?

A. Yes, I did.

\* \* \* \* \* \*

Q. Did you ask her who those secrets were with?

A. Yes.

Q. Who did she say they were with?

A. Daddy.

\* \* \* \* \* \*

Q. What did you ask her next?

A. I asked her if she could tell me about the secret.

Q. What did she say?

A. She said that her father—the secret was that her father was touching her and then she indicated her genital area by touching.

Q. Did she say what he was touching her with?

A. His hand.

Q. Did you use anything to get further information from her regarding that?

A. Yes, I did.

Q. And what did you use?

A. The anatomically correct dolls.

Q. What did she do with those dolls?

A. She took the male doll and laid it on top of the female doll. She took the penis from the male doll and stuck it between the thighs and then she moved the male doll's hips back and forth.

Q. She put the penis of the male doll— and I assume his pants were down?

A. Yes.

Q. Between the thighs of the female doll?

A. Yes.

Q. And were her pants off, too?

A. Yes.

Q. And then she moved the male doll's hips back and forth?

A. Yes."

Such testimony hardly supports a reasonable hypothesis that "any touching was done innocently." Maj. op. at 381. At trial, appellant's second oldest daughter described the same event as follows:

"Q. ... Now will you tell [the jury] about the secret you and your daddy had?

A. Yes.

Q. What happened? Look over here
A____. Tell me what happened.
A. My dad told me not to tell anybody.
Q. Well, it's okay to tell now, so will you tell us now?
A. Yes.
Q. Okay. Tell me what happened. Did your daddy come in a room?
[Objection to leading overruled]
A. Yes.
Q. What did he say when he came in the room?
A. Not to tell anybody.

 &ast; &ast; &ast; &ast; &ast; &ast;

Q. ... What happened when your daddy walked into the room?
A. He told me to pull down my panties.
Q. Okay. And did you do that?
A. Yes.
Q. Because he's your daddy, right, and you mind him?
A. Yes.
Q. Okay. Then what did you do?
A. I did what he told me to do.
Q. And what was that?
A. To pull down my panties.
Q. And then what?
A. Then he pulled down his panties.
Q. And then what did he do?
A. He molested me.

 &ast; &ast; &ast; &ast; &ast; &ast;

Q. How did he do that?
A. By touching me.
Q. What did he touch you with?
A. His hands.
Q. He put his hands where?
A. On my private."

With anatomically correct dolls, the child then demonstrated how appellant had touched her "private" with his hand. This

time she denied "he put anything else between [her] legs beside his hand." Appellant's oldest daughter also testified that appellant had put his hand on her "pee place." Appellant also told her "not to tell anybody."

It would be a gross understatement to say specific intent to arouse and gratify appellant's sexual desire may be readily inferred from proof of the acts themselves. Coupled with the testimony that appellant instructed each child to keep the act secret, the State could not ask for better evidence of lascivious intent.[2] In short, unlike the case in *Morgan v. State*, supra, the State had no need whatever for the evidence of extraneous misconduct that was admitted in this cause. See *Prior v. State*, 647 S.W.2d 956 (Tex.Cr.App.1983). In suggesting otherwise, the majority simply ignores the record.

The trial court admitted all of the extraneous misconduct evidence before the State even attempted to introduce the testimony of the children and the caseworker. At the time the trial court could have made no accurate assessment whether the State really needed it. As it turns out, the State needed it not at all. Nevertheless, almost the entirety of appellant's defense was necessarily devoted to rebuttal of testimony about his language and behavior in front of his children. Under the circumstances the trial court could not but find that "the probative value" of the extraneous misconduct was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Rule 403, supra. That the rule allows the trial court to exclude such evidence ("evidence *may* be excluded ..."), rather than requiring it, cannot authorize unfair trials. At the least, it should not be read to authorize

---

**2.** The majority contends that "[a]ppellant challenged [the daughters'] competency to testify at trial and it would have been reasonable for the trial court to conclude that the young girls would not be able to relate that appellant's touching their vaginal areas was done with the specific intent to cause his sexual arousal." Maj. op. at 381. This argument is hardly persuasive. It is true that appellant asserted his right *to have competency of the children tested by examination of the court.* Tex.R.Cr.Evid.,

Rule 601(a)(2). At the conclusion of each hearing, however, the trial court declared each child a competent witness, *sans* objection from appellant. In no way did defense counsel assail their competency to testify during his final summation. At any rate, that the children themselves may not have understood the significance of appellant's conduct does not change the fact that lascivious intent would be readily apparent *to a jury of adults. The events speak for themselves.*

admission of extraneous misconduct evidence before the trial court could possibly have been equipped to determine its relative probative value. We must ensure, if nothing else, that the trial court does its job.

In my view the majority errs today to invoke abuse of discretion in order to justify for trial courts even a "limited right to be wrong." That kind of appellate deference amounts to appellate abdication. I want no part of it.

Accordingly, I dissent.[3]

TEAGUE, Judge, dissenting.

Believing that the majority opinion does nothing less than to make the waters of extraneous offenses murkier than ever before in the history of this State's criminal jurisprudence on the subject, I respectfully dissent. Also see *Boutwell v. State*, 719 S.W.2d 164, 187 (Tex.Cr.App.1985) (Teague, J., concurring opinion); *Robinson v. State*, 701 S.W.2d 895, 901 (Tex.Cr.App.1985) (Clinton, J., opinion joining the judgment of the Court); and *Morrow v. State*, 735 S.W.2d 907, 908 (Tex.App.—Houston [14th Dist.] 1987).

OPINION ON REHEARING ON COURT'S OWN MOTION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Justice.

We granted rehearing on our own motion in this cause and ordered the parties to re-brief and re-argue the issues with two particular questions in mind. First: once evidence of "other crimes, wrongs or acts" has been shown to have a permissible purpose under Tex.R.Cr.Evid.Rule 404(b), does the defendant shoulder the burden of then persuading the trial court that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, such that it should be excluded under Tex.R.Cr.Evid.Rule 403? Second, what is the proper role of the appellate court in reviewing the trial court's decision both that evidence does serve a permissible purpose, under Rule 404(b), and that the evidence should not be excluded under Rule 403? After argument, with new briefs in hand, we revisit those issues addressed on original submission. Ultimately we hold that the trial court abused its discretion in failing to exclude the extraneous misconduct at issue in this cause under Rule 403.

## I. THE NEW RULES

Evidence is "relevant" that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R.Cr.Evid., Rule 401. "All relevant evidence is admissible, except as otherwise provided by ... these rules.... Evidence which is not relevant is inadmissible." Tex.R.Cr.Evid., Rule 402. Tex.R.Cr. Evid., Rule 404, generally prohibits "the circumstantial use of character evidence." *Goode, Wellborn & Sharlot*, Texas Practice: Texas Rules of Evidence: Civil and Criminal § 404.2 (1988), at 106. Thus, although relevant, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b), supra.[1]

---

**3.** The majority opinion in the court of appeals found the extraneous misconduct evidence here "served its proper function of revealing the familial relationship which provided the context of the charged offense." *Montgomery v. State*, 760 S.W.2d 323, at 325. This language echoes the limited "res gestae" rationale for admitting extraneous sex offenses between a defendant and the complainant when the defendant stands in loco parentis to the complainant, as here. *Boutwell v. State*, supra (Opinion on State's motion for rehearing). There are two purported reasons for admission, *viz:* first, to respond to an accused's denial of the offense, and second,

to show a preexisting relationship in order to demonstrate credibility of a child complainant. *Id.,* at 177. Either reason depends, it seems to me, upon a character propensity inference. *Boutwell* notwithstanding, however, present Rule 404(b), supra, admits of no such exception to its prohibition against character propensity/conformity evidence.

**1.** If the character of a party is directly in issue, the rule does not bar character evidence, "since then it would not be employed to establish a propensity to act in a certain way." *Goode, Wellborn & Sharlot,* supra, at 106. Such evi-

■ Evidence of "other crimes, wrongs, or acts" "may, however, be admissible" if it has relevance *apart from* its tendency "to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b), supra. Hence, a party may introduce such evidence where it logically serves "to make ... more probable or less probable" an elemental fact; where it serves "to make ... more probable or less probable" an evidentiary fact that inferentially leads to an elemental fact; or where it serves "to make ... more probable or less probable" defensive evidence that undermines an elemental fact. Rules 404(b) and 401, both supra. Illustrative of the permissible "purposes" to which evidence of "crimes, wrongs, or acts" may be put are "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Rule 404(b), supra. Extraneous offense evidence that logically serves any of these purposes is "relevant" *beyond* its tendency "to prove the character of a person to show that he acted in conformity therewith." It is therefore admissible, subject only to the trial court's discretion nevertheless to exclude it "if its probative value is substantially outweighed by the danger of unfair prejudice...." Rule 403, supra. On the other hand, if extraneous offense evidence is not "relevant" apart from supporting an inference of "character conformity," it is absolutely inadmissible under Rule 404(b). For if evidence of "other crimes, wrongs, or acts" has only character conformity value, the balancing otherwise required by Rule 403 is obviated, the rulemakers having deemed that the probativeness of such evidence is so slight as to be "substantially outweighed" by the danger of unfair prejudice *as a matter of law. United States v. Beechum*, 582 F.2d 898, at 910 (CA5 1978).[2]

## II. THE TRIAL COURT'S FUNCTION

### A. The Trial Court's Decision Whether To Admit Evidence Under Rule 404(b)

■ When a party attempts to adduce evidence of "other crimes, wrongs or acts," in order to preserve error on appeal, the opponent of that evidence must object in a timely fashion. Optimally, the opponent should object that such evidence is inadmissible under Rule 404(b). An objection that such evidence is not "relevant," or that it constitutes an "extraneous offense" or "extraneous misconduct," although not as precise as it could be, ought ordinarily to be sufficient under the circumstances to apprise the trial court of the nature of the complaint. *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr.App.1977); Tex.R.App.Pro., Rule 52(a). Once that complaint is lodged, it is incumbent upon the proponent of the evidence to satisfy the trial court that the "other crime, wrong, or act" has relevance apart from its tendency "to prove character of a person in order to show that he acted in conformity therewith." Rule 404(b), supra. The trial court should honor any request by the opponent of the evidence for articulation into the record of the purpose for which evidence is either offered by the proponent or ultimately admitted by the trial court.

If the trial court determines the evidence has no relevance apart from character conformity, then the evidence is absolutely inadmissible. The trial court has no discretion to admit it. See 22 Wright & Graham, Federal Practice and Procedure: Evidence §§ 5249 & 5250 (1978), at 540 & 544.

■ On the other hand, the proponent of the evidence may persuade the trial court that the "other crime, wrong, or act" has relevance apart from character conformity; that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity or preparation,

---

dence would not only be relevant, Rule 401, supra, it would also be admissible under Rule 402, supra, because it is not rendered inadmissible by Rule 404, supra. However, character *per se* "is almost never an element of a charge or defense in a criminal case." *Id.*

2. As the majority noted on original submission, cases and commentaries construing the federal rules are instructive to our interpretation of provisions of Article IV of our own Rules of Criminal Evidence. Slip op. at 376, n. 2.

leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g., absence of mistake or accident. Rule 404(b), supra. The proponent may also persuade the court that it is relevant upon a logical inference not anticipated by the rulemakers. This is the reason the "purposes" designated in Rule 404(b) for which "other crimes, wrongs, or acts" are admissible are, as was pointed out on original submission, "neither mutually exclusive nor collectively exhaustive." Cleary, McCormick on Evidence, § 190 (3d ed. 1984), at 558. Cf. *Morgan v. State*, 692 S.W.2d 877, at 879 (Tex.Cr.App.1985) (list in *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr. App.1972) "was exemplary rather than exhaustive...."). Should he admit the evidence, then upon timely further request, the trial judge should instruct the jury that the evidence is limited to whatever purpose the proponent has persuaded him it serves. Tex.R.Cr.Evid Rule 105(a).

## B. The Trial Court's Decision Whether To Exclude Evidence Under Rule 403

### i. When

 Once the trial court rules that the evidence has relevance apart from character conformity, he has ruled on the full extent of the opponent's objection. Error is preserved as to whether the evidence was admissible under Rule 404(b), supra. From this point on the new rules have effected two subtle but important changes in procedure from our practice under the former caselaw. First, an objection that proffered evidence amounts to proof of an "extraneous offense" will no longer suffice, by itself, to invoke a ruling from the trial court whether the evidence, assuming it has relevance apart from character conformity, is nevertheless subject to exclusion on the ground of unfair prejudice. Further objection based upon Rule 403 is now required. Second, when the trial court *is* called upon by sufficient objection to balance probativeness and prejudice, the presumption is now that probativeness is the weightier consideration unless in the posture of the particular case the trial court determines otherwise.

Under prior caselaw there was a so-called "general rule," often cited and invoked, that evidence amounting to an extraneous offense or misconduct was inadmissible. This was said to be so "not because such evidence is without legal relevance to the general issue of whether the accused committed the act charged, but because such evidence is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him." *Albrecht v. State*, supra, at 100. This is no more than an earlier incarnation of the rule, now embodied in Rule 404(b), that as character evidence *per se*, evidence of extraneous misconduct is inadmissible because its probative value is deemed to be outweighed by its inflammatory or prejudicial potential as a matter of law. In *Albrecht* the Court set out a list of purposes other than as character evidence to which extraneous misconduct evidence had been held admissible in the past. This list was widely perceived to articulate "exceptions" to the "general rule" of inadmissibility. But as *Albrecht* itself recognized, "[t]he test for determining the admissibility of any type of evidence is whether the probative value of such evidence outweighs its inflammatory aspects, if any." *Id.*, at 99. Thus, as with any other evidence, proof of extraneous misconduct was said to be admissible if relevant to a material issue in the case, and its relevancy value outweighed its inflammatory or prejudicial potential. E.g., *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1983); *Elkins v. State*, 647 S.W.2d 663 (Tex.Cr.App.1983); *Rubio v. State*, 607 S.W.2d 498 (Tex.Cr. App.1980). If it had relevance apart from character conformity, and it was more probative than prejudicial, evidence of extraneous misconduct was admissible, notwithstanding the "general rule." See *Morgan v. State*, supra, at 879.

 An objection under the caselaw that evidence was inadmissible because it amounted to an extraneous offense was sufficient to alert the trial judge that he must determine *both* that the evidence was relevant to a material issue *and* that its

probative value outweighed its prejudicial impact. But current Rule 403 has "shifted the focus somewhat from the test enunciated in *Williams*, supra, and its progeny. The approach under Rule 403 is to *admit relevant evidence* unless the probative value of that relevant evidence is *substantially* outweighed by the danger of unfair prejudice to a defendant." *Crank v. State*, 761 S.W.2d 328, at 342, n. 5 (Tex.Cr.App.1988) (emphasis in the original). Thus, Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. If the trial court determines that evidence of "other crimes, wrongs, or acts" has relevance apart from character conformity, he should admit the evidence absent a further objection by the opponent of the evidence. The opponent's earlier objection that the evidence has no relevance beyond character conformity, and is therefore inadmissible under Rule 404(b), has been ruled upon. It is now incumbent upon him, in view of the presumption of admissibility of relevant evidence, to ask the trial court to exclude the evidence by its authority under Rule 403, on the ground that the probative value of the evidence, assuming it is relevant apart from character conformity, is nevertheless substantially outweighed by, e.g., the danger of unfair prejudice.

■ Once this objection is made, the trial court is called upon to weigh probativeness of the evidence against its potential for "unfair" prejudice—that is, as the majority iterated on original submission, its "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Note to Fed.R.Evid. 403. Also on original submission, the majority observed that "now it is the opponent's burden to not only demonstrate the proffered evidence's negative attributes but to show also that these negative attributes *'substantially outweigh'* any probative value." Slip op. at 377. To the extent that this language may suggest an opponent has an obligation to do anything more than level an objection that the trial court should exclude the evidence under Rule 403, we disavow it now.

The evidence may be proffered long before the opponent is capable of gauging the proponent's "need" for it. See p. 390, *post.* In that event he would be ill equipped to "demonstrate" whether at least one major factor in the analysis militates for or against exclusion. Indeed, it is the proponent of the evidence who is in the best position to advance the relative probativeness of his evidence. But we do not regard the question of who would best shoulder the burden to be a pertinent one because, in any case, we do not interpret Rule 403 specifically to assign a burden to either party. Rather, we understand Rule 403 to impose a duty upon the trial court. The court would do well to inquire of the opponent what his view of the prejudice is. On the other hand, the court should ask the proponent to articulate his need. But once the rule is invoked, "the trial judge has no discretion as to whether or not to engage in the balancing process." *Wright & Graham*, supra, § 5250, at 544–45. When Rule 403 provides that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," it simply means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence.

ii. How

■ When a further objection is made under Rule 403, it will not suffice for the trial court simply to determine that the evidence is relevant to some legitimate, non-character-related purpose such as one of those enumerated in Rule 404(b). "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Advisory Committee's Note to Fed.R.Evid. 404(b). Factors that should go into the balancing are elaborated in *Wright & Graham*, supra, at 545–551. How compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence—in other words, its inher-

ent probativeness—is certainly a factor. This is often, although by no means invariably, a function of the similarity of the extraneous transaction to the charged offense. See *Robinson v. State,* 701 S.W.2d 895, at 898 (Tex.Cr.App.1985); Imwinkelried, Uncharged Misconduct Evidence, §§ 2:12, 8:07 (1984). It is also a function of the strength of the proponent's evidence to show the opponent in fact committed the extraneous conduct. *Wright & Graham,* supra at 548. Another obvious factor is the potential the "other crimes, wrongs, or acts" have to impress the jury in some irrational but nevertheless indelible way. This is often a function of the nature of the misconduct. *Imwinkelried,* supra, § 8:03. How much trial time does the proponent need to develop evidence of the extraneous misconduct, such that the attention of the factfinder will be diverted from the indicted offense? *Id.; Wright & Graham,* supra, at 549. Finally, how great is the proponent's *"need"* for the extraneous transaction? This last inquiry breaks down into three subparts: Does the proponent have other available evidence to establish the fact of consequence that the extraneous misconduct is relevant to show? If so, how strong is that other evidence? And is the fact of consequence related to an issue that is in dispute? When the proponent has other compelling or undisputed evidence to establish the proposition or fact that the extraneous misconduct goes to prove, the misconduct evidence will weigh far less than it otherwise might in the probative-versus-prejudicial balance. *Morgan v. State,* supra, at 880; *United States v. Beechum,* supra, at 914; *Wright & Graham,* supra, at 546–47.[3]

### III. THE APPELLATE COURT'S FUNCTION

 Under the former caselaw it was said that much of the trial court's role in all of this is "discretionary," and that is still true under the new rules. As we have seen, once the trial court has decided that

proffered evidence of "other crimes, wrongs, or acts" has no relevance apart from character conformity, it does *not* have discretion to admit it over objection. But of necessity, the trial court must have some leeway in deciding *whether* such evidence does in fact serve a legitimate purpose other than as character evidence. Likewise, the trial court has no discretion to refuse a request to conduct a Rule 403 balancing of probativeness versus prejudice and decide whether to exclude evidence of misconduct in spite of its admissibility under Rule 404(b). But after conducting that balancing, applying the factors we have identified to the facts of the particular case, the trial court must be given wide latitude to exclude, or, particularly in view of the presumption of admissibility of relevant evidence, *not* to exclude misconduct evidence as he sees fit. So long as the trial court thus operates within the boundaries of its discretion, an appellate court should not disturb its decision, whatever it may be. Cf. *Templin v. State,* 711 S.W.2d 30, 33 (Tex.Cr.App.1986) (*Williams* test is "left to the trial judge and absent a clear abuse of discretion his decision will not be disturbed on appeal."); *Cantrell v. State,* 731 S.W.2d 84, 90 (Tex.Cr.App.1987) ("And the trial judge's discretion in admitting an extraneous offense is to be given due deference."). We turn next to the difficult question of defining, insofar as it is possible, the scope of that discretion.

### A. Reviewing the Trial Court's Decision Whether To Admit Evidence Under Rule 404(b)

 Appellant argues that because the determination of relevancy is rule-governed, the appellate court's role is of necessity to conduct a *de novo* review to ensure that the trial court adhered to the rules. Evidence is either relevant, appellant contends, or it is not, and the appellate court should reverse the trial court whenever it has admitted evidence as relevant which is not. To the extent it suggests that an

---

**3.** We re-emphasize the point made by the majority on original submission, slip op. at 382–383, that credibility of evidence to establish "other crimes, wrongs, or acts" is not a proper inquiry

for the trial court in ruling on the exclusion, *vel non,* of relevant evidence under Rule 403, supra. *Wright & Graham,* supra, § 5214, at 265–66.

appellate court may always superimpose its own judgment as to relevance over that of the trial court, we reject this approach.

The drafters of Fed.R.Evid.Rule 403 apparently accepted the view that "the law furnishes no test of relevancy." Weinstein & Berger, Weinstein's Evidence ¶ 401[08], at 401–53 (1990). It is true that Rule 401 defines "relevance," but that definition is necessarily a broad one. Whether particular evidence meets the definition will not always be cut and dried. Our adversarial system assigns that question to the trial judge, on the assumption that he has the best vantage from which to decide. Determining the relevance of any given item of evidence to any given lawsuit is not exclusively a function of rule and logic. The trial court must rely in large part upon its own observations and experiences of the world, as exemplary of common observation and experience, and reason from there in deciding whether proffered evidence has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, supra. The determination of relevance, *vel non*, thus depends upon one judge's perception of common experience. See *Weinstein & Berger*, supra, ¶ 401[01], at 401–10. The process cannot be wholly objectified. Reasonable men may disagree whether in common experience a particular inference is available. Where there is room for such disagreement, an appellate court that reverses a trial court's ruling on relevancy accomplishes nothing more than to substitute its own reasonable perception of common experience for that of the trial court. The appellate court effectively displaces the trial court, commandeering a function institutionally assigned elsewhere.

To avoid this anomaly, appellate courts uphold the trial court's ruling on appeal absent an "abuse of discretion." That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede. The trial court's ruling is not, however, unreviewable. Where the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can be said the trial court abused its discretion to admit that evidence. Moreover, when it is clear to the appellate court that what was perceived by the trial court as common experience is really no more than the operation of a common prejudice, not borne out in reason, the trial court has abused its discretion. In either event the appellate court should recognize that the trial court erred to admit the proffered evidence, and proceed to determine harmfulness under Tex.R.App.Pro., Rule 81(b)(2).

■ Whether objected-to evidence of "other crimes, wrongs, or acts" has relevance apart from character conformity, as required by Rule 404(b), supra, is also a question for the trial court. The trial judge must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. An appellate court owes no less deference to the trial judge in making this judgment than it affords him in making any other relevancy call.

### B. Reviewing the Trial Court's Decision Whether To Exclude Evidence under Rule 403

■ We also measure the trial court's ruling whether to exclude evidence of "other crimes, wrongs, or acts" under Rule 403 by an abuse of discretion standard. The majority on original submission went so far as to declare that in making this assessment, the appellate court should afford the trial court "a 'limited right to be wrong,' so long as the result is not reached in an arbitrary or capricious manner." Op. at 380, citing Rosenberg, Judicial Discretion, 38 Ohio Bar 819, 823 (1965). By this we meant nothing more than that an appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement. We did not mean to

say that appellate review of the trial court's decision whether to exclude evidence under Rule 403 is altogether precluded so long as it appears that the trial court conducted a balancing of probativeness and prejudice when timely called upon to do so.

Rule 403 provides by its terms that relevant evidence "may" be excluded. It could be argued that use of the permissive "may", in combination with the presumption of admissibility of relevant evidence, shows that the rulemakers contemplated that a trial court's decision whether to exclude evidence under Rule 403 would not be subject to appellate review. The federal rule has not been construed in this way, however. See *Wright & Graham, supra,* § 5224, at 323–24 & n. 9. Indeed, the Fifth Circuit has commented that it reads the rule "to *require* exclusion when prejudice outweighs probative value." *United States v. Preston,* 608 F.2d 626, at 639, n. 16 (5th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980). In context of "other crimes, wrongs, or acts" evidence, Professors Wright and Graham have observed that:

> "the discretion of the trial judge arises in connection with the balancing of the probative worth of the evidence for some relevant purpose against the prejudice that arises from the possibility that it will be used for the forbidden inference as to propensity. It is to this balancing that the appellate courts will afford 'deference to the judgment of the trial court.' *However, even here appellate supervision is available in cases of abuse of discretion.*" (emphasis added.)

*Id.,* § 5250, at 544.

This appellate deference is a rule of judicial restraint, intended, once again, to avoid the anomaly of having appellate courts usurp a function that the system assigns to the trial courts. See *United States v. Long,* 574 F.2d 761 (CA3 1978). The appellate court should not conduct a *de novo* review of the record with a view to making a wholly independent judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially outweighed by the danger of unfair preju-

dice. It should reverse the judgment of the trial court "rarely and only after a clear abuse of discretion." *United States v. Maggitt,* 784 F.2d 590, 597 (CA5 1986).

But reviewing the trial court's judgment for abuse of discretion requires more of an appellate court than deciding that the trial judge did in fact conduct the required balancing and did not simply rule arbitrarily or capriciously. The appellate court must measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made. This approach is consistent with the Fifth Circuit's appellate review under the federal rule. E.g., *United States v. Beechum, supra; United States v. Benton,* 637 F.2d 1052 (CA5 1981); *United States v. Emergy,* 682 F.2d 493 (CA5), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 615 (1982); *United States v. Shaw,* 701 F.2d 367 (CA5 1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984). It is also faithful to this Court's long tradition of determining the admissibility of extraneous offense evidence on appeal by reviewing not only the relevance of that evidence, but the State's need for it as well. E.g., *Albrecht v. State, supra,* at 100 ("Evidence of extraneous offenses committed by the accused has been held admissible: ... (2) To circumstantially show identity *where the state lacks direct evidence on this issue.* (3) To prove scienter, where intent or guilty knowledge is an essential element of the state's case *and cannot be inferred from the act itself.* (4) To prove malice or state of mind, when malice is an essential element of the state's case *and cannot be inferred from the criminal act....*") (emphasis added; footnotes omitted); *Prior v. State,* 647 S.W.2d 956 (Tex.Cr.App.1983).

Therefore we hold that where relevant criteria, viewed as objectively as possible, lead to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. Relevant criteria gleaned from the authorities include, *inter alia,* that the ultimate issue was not seriously contested by the opponent; that the State had other

convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious. Accordingly, when the record reveals one or more such relevant criteria reasonably conducing to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, then an appellate court should conclude that the trial court acted irrationally in failing to exclude it, and thus abused its discretion. The trial court has no "right" to be "wrong" if that means to admit evidence which appears to the appellate court, affording all due deference to the trial court's decision, nevertheless to be substantially more prejudicial than probative.[4]

## IV. APPLICATION OF THE LAW TO THE FACTS OF THIS CASE

### A. Rule 404(b) Relevance

Appellant was tried simultaneously under two indictments for indecency with a child committed against two of his three young daughters. One of appellant's former wives, not the mother of his daughters, testified that in her experience, appellant would "quite frequently" "walk around in the nude" in front of his children "[w]ith erections."[5] Prior to admission of this testimony, appellant objected "on the

grounds of relevancy and also on the grounds this is getting into extraneous offenses." There was other testimony from several witnesses that appellant used inappropriate language in relating to his daughters. He is said to have made statements such as: "Give me your hot love." "You and I were made for each other." "Press your hot lips to mine." He described his second oldest daughter as having a "fat pussy," and would instruct his daughters when they were bathing, "Don't forget to wash your slit." Appellant had taught his daughters to French kiss, and one or more of them sometimes slept in his bed. All of this evidence was admitted during the State's case-in-chief, before any evidence was proffered to prove the specific offenses alleged in the indictments. On appeal appellant complained only of admission of the testimony that he walked around in front of the children with an erection.

### i. Boutwell v. State

The court of appeals held that the extraneous misconduct at issue was admissible because it enhanced the credibility of the child complainants, reasoning that:

"evidence of [appellant's] inappropriate sexual conduct directed toward his children was relevant to place the charged offense in the context of the relationship between [appellant] and his children. The evidence was admissible 'to aid the jury in properly evaluating the inherently questionable testimony of a minor against an adult responsible for his wel-

---

**4.** Appellate review of the trial court's balancing under Rule 403 would be facilitated by on-the-record articulation of the considerations that governed the trial court's decision. *Weinstein & Berger*, supra, ¶ 401[01], at 401–14. Although we are not called upon to do so in this case, we note that the Fifth Circuit has required the federal district courts, upon request, to make the record reflect those considerations, on pain of remand. *United States v. Robinson*, 700 F.2d 205, at 213 (CA5 1983), *cert. denied,* 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984); *United States v. Zabaneh*, 837 F.2d 1249 (CA5 1988).

**5.** On original submission the majority depicts this testimony as showing appellant "paraded

around in front of his minor daughters ... in the nude with an erection." However, no witness at trial characterized appellant's conduct as a "parade." In final argument, paraphrasing appellant's own testimony as to what he denied ever having done, the prosecutor said, "he did not parade around in the nude...." The court of appeals describes the State's testimony as showing "that appellant had walked around nude with an erection in front of his daughters, the complainants." 760 S.W.2d at 324. In spite of much rhetoric from the State during oral argument on rehearing about the "penis parade," we now adhere to the court of appeals' characterization of the evidence.

fare or in a position of authority or control over the minor.' *Boutwell* [*v. State*], 719 S.W.2d [164,] at 178–179 [(Tex.Cr.App.1985) (Opinion on State's motion for rehearing)]."

*Montgomery v. State*, 760 S.W.2d 323, at 325 (Tex.App.—Dallas 1988).

*Boutwell v. State*, supra, was decided before the effective date of the new rules of criminal evidence. Under present Rule 404(b), extraneous misconduct cannot be used "to prove the character of a person in order to show that he acted in conformity therewith." The evidence must serve some other purpose under Rule 404(b) in order to be admissible over objection. In *Boutwell* the Court identified a purpose to which extraneous sexual misconduct evidence may be put that has long been a part of Texas law, although not expressly recognized in the *Albrecht* list. We held that such evidence may be relevant to counteract a perceived societal aversion to the notion that parents or others *in loco parentis* would actually commit sexual crimes against their own children.[6] Because incestuous crimes usually occur in secrecy, the State's case may depend upon the credibility of the child complainant. Where the accused calls that credibility into question, evidence of other identical or similar acts of sexual misconduct perpetrated by a parent against his own child may well serve to shore up testimony of the child if in logic it shows a lascivious attitude (relevant to culpable intent) and a willingness to act on it (relevant to prohibited conduct) that a jury might otherwise be loathe to attribute to a parent toward his child. Where under the circumstances of the particular case the evidence logically serves such a purpose, it may have relevance under Rule 404(b), supra, apart from character conformity.

### ii. Specific Intent

■ On original submission the majority eschewed the court of appeals' reliance upon *Boutwell* and concluded instead that appellant's conduct was relevant inasmuch as it tended to prove "appellant's sexual motive if he touched the complainants." Slip op. at 381. It is at least subject to reasonable debate whether the testimony that appellant frequently walked around in front of his daughers naked and with an erection, in combination with other evidence of inappropriate behavior toward them, did have a tendency to show a generalized "intent to arouse and gratify" his own sexual desire *vis-a-vis* his children. This in turn would support an inference that, if he did in fact touch his daughters' genitals with his hand on the occasions alleged, it was a specific manifestation of that same intent to arouse and gratify his sexual desire, an elemental fact in these prosecutions. It would have been better had the prosecutor articulated this purpose in response to appellant's objection at trial, not only to facilitate the trial court's ruling, as well as appellate review thereof, but also to enable appellant to request an appropriate limiting instruction. See Rule 105(a), supra. Appellant requested no such articulation, however, and we hold it was not an abuse of discretion for the trial court to have found the evidence had relevance apart from character conformity.

---

**6.** In disagreement with the majority holding that extraneous incestuous acts were inadmissible against a defendant father who had committed sexual intercourse with his minor daughter, Judge Ramsey, in a separate opinion in *Skidmore v. State*, 57 Tex.Cr.R. 497, 123 S.W. 1129, at 1136 (1909), opined:

"The improbability of such an offense without some precedent or subsequent relationship of a similar character renders necessary for the protection of society a rule, so well established, that as throwing light on, as corroborative of the incident and act relied upon, it is permissible to show other acts of similar character. If in a given case a father was charged with incest, with his daughter the victim, it would, in most cases, if the state was restricted in its proof to one single act of intercourse, seem almost incredible that any father should be guilty of an offense of this kind upon the child of his loins."

Judge Ramsey's view was largely vindicated a year and a half later in *Battles v. State*, 63 Tex.Cr.R. 147, 140 S.W. 783 (1911), which in turn paved the way for the Court's opinion in *Boutwell*. This view is not without its detractors. See *Mannie v. State*, 738 S.W.2d 751, at 759 (Tex.App.—Dallas 1987, pet. ref'd) (Thomas, J., concurring).

### B. Rule 403 Balancing

■■■ Appellant voiced no separate objection to the evidence based upon Rule 403. Nevertheless, perhaps following the pattern of the caselaw preceding the new rules, the court of appeals observed that "[t]he relevancy of this evidence must be balanced against its potential for prejudice." *Montgomery,* supra, at 325. At no point in the appellate process, including in response to appellant's original petition and on rehearing, has the State complained that appellant failed to preserve error. That question is therefore not before us. *Tallant v. State,* 742 S.W.2d 292, 294 (Tex.Cr. App.1987); *Rochelle v. State,* 791 S.W.2d 121 (Tex.Cr.App.1990). We proceed, then, to review the court of appeals' conclusion "that the probative value of the extraneous evidence outweighed any possibility of prejudice." *Montgomery,* supra, at 325.

■■■ In concluding that probative value outweighed prejudice, the court of appeals reasoned:

"The possibility that the jury convicted [appellant] for indecent exposure rather than indecency with a child does not outweigh the probative value of the evidence. The contested evidence did not establish a pattern of chronic child abuse such as would cause the jury to convict [appellant] of general criminality while maintaining reasonable doubts as to the specifically charged offense. Rather, the evidence served its proper function of revealing the familial relationship which provided the context of the charged offense."

*Id.* See also *Mannie v. State,* 738 S.W.2d 751, at 756 (Tex.App.—Dallas 1987, pet. ref'd); *Pacheco v. State,* 764 S.W.2d 388, at 389 (Tex.App.—Amarillo, 1989, no pet.). We note two deficiencies in this analysis. First, the question of prejudice is not solely a function of whether the jury would likely convict appellant of the wrong offense, or for "general criminality." Evidence of "other crimes, wrongs, or acts" may also create "unfair prejudice" if under the circumstances a jury would be more likely to draw an impermissible character conformity inference than the permissible inference for which the evidence is relevant, or if it otherwise distracts the jury from "the specifically charged offense" and invites them to convict on a moral or emotional basis rather than as a reasoned response to the relevant evidence. Second, in weighing prejudice against probative value, the court of appeals failed to make any inquiry into the State's need for the evidence.

The State elicited testimony of appellant's "other crimes, wrongs or acts" in the early going during its case-in-chief, before any attempt was made to present evidence of the particular events for which appellant stood trial. Without at least some inquiry of the State as to what other evidence it had relevant to appellant's specific intent, the trial court was not in a position reliably to assay the probative value of this testimony against the need of the State for admitting it. Indeed, as the State's case developed, it became clear that the State's need was minimal at best. For the events themselves, as related by the daughters and by a Department of Human Services caseworker, served unequivocally to establish appellant's intent to arouse and gratify his own sexual desire.

The caseworker testified pursuant to Article 38.072, V.A.C.C.P. She related that appellant's eldest daughter told her that appellant had touched her in her genital area. Appellant's second oldest daughter was somewhat more graphic in her description to the caseworker:

"Q. Did you ask her whether or not she had any secrets?

A. Yes, I did.

\* \* \* \* \* \*

Q. Did you ask her who those secrets were with?

A. Yes.

Q. Who did she say they were with?

A. Daddy.

\* \* \* \* \* \*

Q. What did you ask her next?

A. I asked her if she could tell me about the secret.

Q. What did she say?

A. She said that her father—the secret was that her father was touching her

and then she indicated her genital area by touching.

Q. Did she say what he was touching her with?

A. His hand.

Q. Did you use anything to get further information from her regarding that?

A. Yes, I did.

Q. And what did you use?

A. The anatomically correct dolls.

Q. What did she do with those dolls?

A. She took the male doll and laid it on top of the female doll. She took the penis from the male doll and stuck it between the thighs and then she moved the male doll's hips back and forth.

Q. She put the penis of the male doll—and I assume his pants were down?

A. Yes.

Q. Between the thighs of the female doll?

A. Yes.

Q. And were her pants off, too?

A. Yes.

Q. And then she moved the male doll's hips back and forth?

A. Yes."

\* \* \* \* \* \*

At trial, appellant's second oldest daughter described the same event as follows:

"Q. ... Now will you tell [the jury] about the secret you and your daddy had?

A. Yes.

Q. What happened? Look over here A____. Tell me what happened.

A. My dad told me not to tell anybody.

Q. Well, it's okay to tell now, so will you tell us now?

A. Yes.

Q. Okay. Tell me what happened. Did your daddy come in a room?

[Objection to leading overruled]

A. Yes.

Q. What did he say when he came in the room?

A. Not to tell anybody.

\* \* \* \* \* \*

Q. ... What happened when your daddy walked into the room?

A. He told me to pull down my panties.

Q. Okay. And did you do that?

A. Yes.

Q. Because he's your daddy, right, and you mind him?

A. Yes.

Q. Okay. Then what did you do?

A. I did what he told me to do.

Q. And what was that?

A. To pull down my panties.

Q. And then what?

A. Then he pulled down his panties.

Q. And then what did he do?

A. He molested me.

\* \* \* \* \* \*

Q. How did he do that?

A. By touching me.

Q. What did he touch you with?

A. His hands.

Q. He put his hands where?

A. On my private."

With anatomically correct dolls, the child then demonstrated how appellant had touched her "private" with his hand. This time she denied "he put anything else between [her] legs beside his hand." Appellant's oldest daughter also testified that appellant had put his hand on her "pee place." Appellant had told her also "not to tell anybody."

Thus the State presented evidence that each child was touched in a way that can hardly be attributed to normal parental caretaking. That appellant instructed both children not to reveal the event to anyone shows a consciousness of wrongdoing which in turn leads to an inference that when he touched the children as he did, appellant harbored a specific intent to arouse and gratify his own sexual desire. The children themselves may not have fully appreciated the significance of appellant's conduct, but this would not diminish the impact of their testimony. Appellant's lascivious intent would be readily apparent to a jury of adults. Thus, the State had other compelling evidence to show appellant touched his children with the intent to arouse and gratify his own sexual desire.

Nor, as it turned out, did the State need evidence "revealing the familial relationship which provided the context of the charged offense." Such evidence serves to shore up a child complainant's testimony. But as the Court observed in *Boutwell*, supra at 178, a prerequisite to admission of evidence for this purpose "was that the defendant must first deny the act or undermine or impeach the complainant in some way before extraneous acts are admissible." This was no more than a specific application of the former rule that extraneous offenses are inadmissible if more prejudicial than probative. *Id.*, at 175. Unless the accused denied the offense, or impeached the child complainant, the prejudice was deemed weightier than the probative value. In the instant cause the testimony needed no shoring up. The two complainants "corroborated" one another. *Id.*, at 178, n. 1. Their testimony was also buttressed by prior consistent statements that each made separately to the caseworker. Appellant's cross-examination of these witnesses was brief and inefficacious. He did not challenge the children's stories. After the State rested, appellant testified in his own behalf. He spent the bulk of his testimony denying the various extraneous acts and statements attributed to him during the State's case-in-chief. Although he generally denied ever having touched his daughters in an inappropriate manner, he did not contest the particular testimony of the children or the caseworker. Appellant did baldly assert that his daughters had been "coached" in their testimony either by one of his ex-wives or by the caseworker. The State persuasively countered these assertions, however, by showing that neither of appellant's former wives had had recent access to the children, and that the caseworker had no motive to coach them.

We conclude the State had no compelling need to show that appellant frequently walked around naked, with an erection, in the presence of his children, either to prove specific intent or to shore up testimony of the complainants.

Inherent probativeness and inherent prejudice also weight in favor of exclusion. Though relevant, such evidence has only marginal probative value. By contrast, the danger of unfair prejudice from such testimony is substantial. Both sexually related misconduct and misconduct involving children are inherently inflammatory. Many in our society would condemn appellant for his conduct whether they believed it showed sexual arousal directed at his children, an undifferentiated sexual arousal imprudently displayed, or simply an incidental erection coupled with a damnable nonchalance. In any event there was a grave potential for decision on an improper basis, as jurors may have lost sight of specific issues they were called upon to decide and convicted appellant out of a revulsion against his parental demeanor. A substantial portion of the State's case was devoted to showing such extraneous misconduct, and most of appellant's evidence was responsive to it. Under these circumstances a jury instruction would not likely have neutralized the danger. We conclude that probativeness was minimal while the potential for prejudice was great.

Because all factors militate in favor of a finding that the probativeness of the evidence was substantially outweighed by the danger of unfair prejudice, we conclude that the trial court abused its discretion to admit it. The court of appeals erred to conclude otherwise. Accordingly, we reverse the judgment of the court of appeals and remand the cause to that court for a determination of whether the error in admitting the evidence was harmless under Rule 81(b)(2), supra.

As to Parts I, II, and III, McCORMICK, P.J., and WHITE, J., concur in the result.

As to Part IV, McCORMICK, P.J., and CAMPBELL and WHITE, JJ., dissent.