Warner 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON REMAND


 





NO. 3-92-422-CR





WILLIE EDWARD WARNER,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT



NO. 41,421, HONORABLE STANTON B. PEMBERTON, JUDGE PRESIDING



 





 This cause is before us on remand from the Texas Court of Criminal Appeals. 
Willie Edward Warner was convicted of the offense of bond jumping and failure to appear. 
Tex. Penal Code Ann. § 38.11(a), (f) (West 1989). The jury found enhancement allegations
true and assessed punishment at confinement for twenty-five years. This Court originally
affirmed the trial court's judgment. Warner v. State, No. 03-92-422-CR (Tex. App.--Austin
Oct. 13, 1993) (not designated for publication). The court of criminal appeals granted
Warner's petition for discretionary review and held that this Court erred in holding that
appellant failed to properly object to the introduction of extraneous offense evidence. Warner
v. State, No. 1341-93 (Tex. Crim. App. Feb. 16, 1994) (not designated for publication). The
court of criminal appeals remanded the cause to this Court to consider appellant's point of
error in light of its decision that appellant's complaint was adequately preserved for appeal. 
Id. We will reverse the conviction and remand the cause for a new trial.



BACKGROUND


 On September 1, 1990, a complaint was filed against appellant for aggravated
assault with a deadly weapon. Appellant was arrested and the magistrate set bond at $1500
conditioned upon appellant's instanter appearance before the district court. Appellant made
bond on October 22, 1990. On April 27, 1991, appellant was indicted and the bond was
continued. Appellant failed to appear for the pretrial docket on July 12, 1991, whereupon his
bond was forfeited and an arrest warrant was issued. On December 10, 1991, appellant was
arrested in Bell County. After a trial, appellant was acquitted of the offense of aggravated
assault. Subsequently, on May 27, 1992, the State filed an indictment for bond jumping and
failure to appear. A trial on the merits was held on June 29, 1992. At trial, appellant's
defense was that he did not receive notice of the pretrial docket date. See Tex. Penal Code
Ann. § 38.11(c) (West 1989) (reasonable excuse for failure to appear is defense to prosecution
for bail jumping).



DISCUSSION


 Appellant contends the trial court improperly allowed the State to introduce into
evidence, during the guilt-innocence phase of his trial, enhancement allegations contained in
the April 27 aggravated assault indictment. (1) These allegations reflected two prior felony
convictions. Appellant contends that the prejudicial effect of the enhancement allegations
outweighed their probative value. Tex. R. Crim. Evid. 403, 404(b).

 Evidence of other crimes, wrongs, or offenses is not admissible to prove the
defendant's propensity to commit crime and that the defendant acted in conformity therewith. 
Tex. R. Crim. Evid. 404(b). The evidence may be admitted to show motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. 
Extraneous offense evidence that logically serves any of these purposes is admissible subject
only to the trial court's discretion to exclude it if the danger of unfair prejudice substantially
outweighs its probative value. Tex. R. Crim. Evid. 403; Montgomery v. State, 810 S.W.2d
372, 387 (Tex. Crim. App. 1990). (2)

 The State argued at trial and on appeal that the enhancement paragraphs
contained in the indictment for aggravated assault were necessarily admitted because they were
relevant to appellant's intent in failing to appear, an element of the bond jumping offense. 
Tex. Penal Code Ann. § 38.11(a) (West 1989). The State also argued that the enhancement
paragraphs were relevant to the issue of motive. The State explains on appeal that a person
facing a third degree felony charge with a maximum punishment of ten years' imprisonment
and a fine of up to $10,000 is more likely to appear in court than a person facing habitual
offender punishment of twenty-five years' to life imprisonment. See Tex. Penal Code Ann. §
12.34, .42(d) (West Supp. 1994) (providing range of punishment for third degree felony
offenses and habitual offenders). Appellant concedes that this argument is plausible but argues
that the trial court should have disallowed the introduction of the enhancement paragraphs into
evidence because of the danger of unfair prejudice. Tex. R. Crim. Evid. 403.

 We review the trial court's ruling regarding the admissibility of the
enhancement paragraphs applying the abuse of discretion standard. Montgomery, 810 S.W.2d
at 391. In so doing, we measure the trial court's ruling against the criteria relevant to a rule
403 decision. Id. at 392. Relevant criteria include (1) whether the ultimate issue was
seriously contested by the opponent, (2) the State's need for the evidence and the availability
of other convincing evidence to establish the ultimate issue to which the extraneous conduct
was relevant, (3) the degree of the probative value of the evidence and whether it was
particularly compelling, and (4) whether the misconduct was of such a nature that a jury
instruction to disregard it for any reason but its proffered purpose would be futile. Id. at 392-93. When the record reveals that one or more of the relevant criteria illuminates a risk that
the probative value of the evidence is substantially outweighed by unfair prejudice, we must
conclude that the trial court acted irrationally in failing to exclude it, and therefore abused its
discretion. Id. at 393. (3)

 The record reveals that the State had other convincing evidence of appellant's
intent. The State called both the attorney who represented appellant during his trial for
aggravated assault and appellant's bondsman as witnesses. Both testified that appellant failed
to keep in regular contact with them in order to receive notification of his court date. 
Although this testimony was refuted by appellant, it is evidence of an intent to fail to appear. 
See Richardson v. State, 699 S.W.2d 235, 238 (Tex. App.--Austin 1985, pet. ref'd) (evidence
that defendant engaged in course of conduct designed to prevent him from receiving notice
shows intent to fail to appear).

 Likewise, the State had other means of establishing appellant's motivation not to
appear because he faced lengthy incarceration if convicted. Rather than introduce the
enhancement paragraphs to inform the jury that appellant had previously been convicted of
armed bank robbery and possession of a firearm by a felon, the State could have presented
evidence that appellant faced enhanced punishment because of unspecified prior convictions. 
To establish motivation based on an increased range of punishment, the State had no need to
inform the jury of the particular details of a particular offense committed at a particular time in
the past. Indeed, the State elicited testimony from appellant's former attorney about the
increased range of punishment appellant faced due to the enhancement paragraphs. 
Montgomery emphasizes our long tradition of evaluating the need for evidence of extraneous
offenses in the face of a rule 403 objection. The trial court's inquiry into the State's need for
admitting the extraneous offenses breaks down into three subparts:



Does the proponent have other available evidence to establish the fact of
consequence that the extraneous misconduct is relevant to show? If so, how
strong is that other evidence? And is the fact of consequence related to an issue
that is in dispute? 



Montgomery, 810 S.W.2d at 390. In order to reliably balance the probative value of
extraneous offenses against their potential for unfair prejudice, the trial court must inquire
what other evidence the State has relevant to intent or motivation. "When the proponent has
other compelling or undisputed evidence to establish the proposition or fact that the extraneous
misconduct goes to prove, the misconduct evidence will weigh far less than it otherwise might
in the probative-versus-prejudicial balance." Id. (citations omitted). Here the State had no
need to introduce the details of the enhancement paragraphs when the increased range of
punishment was established by other reliable undisputed evidence.

 By failing to inquire into the State's need to admit into evidence the particular
details of the enhancement paragraphs, the trial court ignored one of the "relevant criteria
reasonably conducing to a risk that the probative value of the tendered evidence is substantially
outweighed by unfair prejudice." Id. at 393. We conclude that in this instance the trial court
abused its discretion in failing to exclude the enhancement paragraphs.

 In light of the foregoing, the probative value of the enhancement paragraphs
does not outweigh the unfair prejudice that results in admitting evidence that provides the
particular details of prior felony convictions at the guilt-innocence stage of trial. Such
evidence creates the potential for a decision made on an improper basis. Appellant's
credibility is diminished in the eyes of the jury. The jury could infer that appellant's failure to
appear conformed to his conduct and nature as a convicted criminal. Finally, the admission of
enhancement allegations to the jury at the outset of the trial may have jeopardized appellant's
presumption of innocence. See Frausto v. State, 642 S.W.2d 506, 509 (Tex. Crim. App.
1982) (citing Martinez v. State, 588 S.W.2d 954, 956 (Tex. Crim. App. 1979) (holding that
state may not read enhancement allegations to jury in order to inform them of range of
punishment at beginning of trial)); see also Tex. Code Crim. Proc. Ann. art. 36.01(a)(1)
(West Supp. 1994) (precluding reading enhancement portions of an indictment or information
until the punishment face of the trial). It is unlikely that these dangers would have been
neutralized by a limiting instruction to the jury. (4)

 We next turn to the question of whether the trial court's error in admitting the
enhancement paragraphs was harmless. Tex. R. App. P. 81(b)(2). Our analysis does not
focus on the propriety of the outcome of the trial, but on the integrity of the process leading to
appellant's conviction. Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). The
factors we consider are the source of the error, the nature of the error, whether and to what
extent the error was emphasized by the State, the collateral implications of the error, how
much weight a juror would probably place on the error, and whether declaring the error
harmless would encourage the State to repeat it with impunity. Id.

 In order to evaluate the nature and effect of the trial court's error, it is
necessary to review the evidence upon which appellant's conviction was based. The State did
not show that appellant received actual notice of his trial date. Rather, it sought to establish
that appellant maintained a course of conduct intended to prevent his attorney, bondsman, or
other authority from notifying him that his appearance in court was required. Appellant's
attorney in the aggravated assault case testified that it was his usual practice to advise his
clients released on bond to keep in touch with him on a regular basis. He also stated that he
called appellant's home before the July 12 hearing and left a message with his mother
requesting that appellant return his call. Appellant's mother denied receiving the call. 
Appellant's bondsman testified that his clients are required to call in every Monday so that
they may be notified of upcoming court dates. According to his records, which were
introduced into evidence, appellant stopped calling the bondsman's office after April 29, 1991. 
Appellant, however, maintained that he continued to call his bondsman's office every week
until he received notice that his bond had been forfeited on September 16, 1991. The
bondsman also testified that it was his practice to notify his clients by mail of court dates, but
he did not maintain a copy or record of any letter sent to appellant. He further stated that he
sent an employee to look for appellant at his home on July 12, 1991, when appellant did not
appear at the pretrial docket, but could provide no record of this. Two sheriff's deputies also
testified that they returned to appellant's home two or three times to serve the warrant for his
arrest for bond jumping because they did not find appellant at home.

 The crux of appellant's argument was that he relied on his bondsman to notify
him of court dates and continued to call him every week until he learned his bond had been
forfeited. This was refuted by the bondsman's records, which noted appellant's calls to the
office from the time of his release on bond until late April 1991. No subsequent notations
appeared. The jury essentially was asked to judge the credibility of the bondsman and his
records against appellant's credibility. The trial court's error in allowing the jury to learn of
appellant's prior felony convictions likely impacted the jury's deliberations by presenting the
jury with the choice of accepting either the testimony of the State's witness or that of a
convicted felon. The jury was, in fact, instructed in the court's charge to consider appellant's
prior convictions in its assessment of appellant's credibility and testimony.

 The State also emphasized the extraneous offense evidence in its closing
statement, arguing that since appellant was a convicted felon, he was familiar with the criminal
justice system and cognizant of the necessity to keep in touch with his attorney and bondsman. 
The State clearly used the evidence against appellant for a purpose beyond even the one for
which it was allegedly introduced, to show appellant's motive in light of the punishment he
would face as an habitual offender. Because of the State's emphasis of the evidence in an
impermissible manner, and the likelihood that the extraneous offense evidence played a pivotal
role in the jury's assessment of appellant's credibility, we cannot say the trial court's error in
allowing the introduction of the enhancement paragraphs into evidence did not contribute to
appellant's conviction and was therefore harmless.



CONCLUSION


 Because the trial court abused its discretion in admitting into evidence the
enhancement paragraphs and because their introduction constituted harmful error, we reverse
appellant's conviction and remand the cause for a new trial.



 Bea Ann Smith, Justice 

Before Justices Aboussie, Jones and B. A. Smith

Reversed and Remanded

Filed: August 31, 1994

Do Not Publish


 
1. [1]  The indictment for the offense for which the defendant allegedly failed to appear may be
introduced into evidence in a bond jumping case. Euziere v. State, 648 S.W.2d 700, 703
(Tex. Crim. App. 1983). Unlike this cause, however, the indictment in Euziere was offered
without enhancement paragraphs.
2. [2]  Prior felony convictions may also be introduced to attack a witness' credibility. Tex. R.
Crim. Evid. 609(a). The convictions in this cause, however, were more than ten years old and
therefore inadmissible without a determination by the trial court that their probative value
substantially outweighed their prejudicial effect. Tex. R. Crim. Evid. 609(b). Moreover, the
State did not originally introduce the enhancement paragraphs in order to impeach appellant.
3. [3]  Appellant argues that if no discussion of the relevant Rule 403 criteria appears in the
trial-court record, we must conclude that the trial court erred in failing to properly exercise its
discretion. See Flores v. State, 840 S.W.2d 753, 756 (Tex. App.--El Paso 1992, no pet.)
(citing Montgomery, 810 S.W.2d at 392). We believe this argument misconstrues the court of
criminal appeals' discussion of Rule 403 balancing in Montgomery. While the court of
criminal appeals noted that appellate review of the trial court's balancing under Rule 403
would be facilitated by an "on the record articulation of the considerations that governed the
trial court's decision," it does not hold that a trial court's failure to do so constitutes error. 
Montgomery, 810 S.W.2d at 393 n.4. 
4. [4]  The trial court's charge to the jury, in fact, exacerbated the prejudicial effect of the
extraneous offense evidence. The charge instructed the jury to use the evidence in assessing
appellant's credibility and the weight to be given to his testimony. No instruction was given
limiting the jury's consideration of the enhancement paragraphs to its assessment of appellant's
motive and intent, the elements for which the evidence was initially introduced.