TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00578-CR






Erik Trove, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. 9044129, HONORABLE JON N. WISSER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Erik Trove of retaliation for mailing threatening letters to
this Court. See Tex. Penal Code Ann. § 36.06 (West Supp. 2006). (1) He was sentenced to twenty-five
years in prison. In two points of error, Trove contends that the trial court erred by excluding
evidence that he claims supports his affirmative defenses of duress and necessity and by refusing to
instruct the jury to consider these defenses. We conclude that there was no connection between the
proffered evidence and the affirmative defenses of duress and necessity. The proffered evidence was
properly excluded. We further conclude that, because there was no evidence to support the
submission of either affirmative defense to the jury, the court properly refused to instruct the jury
to consider them. We affirm the trial court's judgment.

Factual and Procedural Background

 In 1983, Trove was convicted of murder and sentenced to thirty years in prison. He
is serving his sentence in the French Robertson Unit in Abilene, Texas. Trove complains of
mistreatment during his incarceration, both by Texas Department of Criminal Justice (TDCJ)
officials and by other inmates. According to Trove, much of the mistreatment he suffers arises from
the refusal of TDCJ officials to accommodate his need for modified treatment due to chronic medical
conditions. Scar tissue resulting from a mastoidectomy (2) causes blood to clot in Trove's ear, which
requires his ear canal to be evacuated every six months. Because of this condition, Trove's doctors
have ordered that he not be subjected to blunt trauma to his head and that he should, therefore, be
separated from gang members to protect him from gang violence. Trove testified that, despite his
condition, he has suffered numerous attacks by guards and by other inmates. Trove also suffers from
asthma. Prison doctors have ordered that he be removed from the area when tear gas is used to
subdue prisoners in nearby cells. According to Trove, TDCJ officials ignore these orders.

 When Trove went on a hunger strike in 1998, TDCJ officials force-fed him to keep
him alive. Trove filed a civil lawsuit against Wayne Scott, then acting director of the TDCJ,
requesting a temporary restraining order to prevent TDCJ from doing anything to prolong or save
his life. The motion was denied by the trial judge. A panel of judges of this Court affirmed the trial
court's decision to deny injunctive relief. The opinion was filed July 29, 1999. See Trove v. Scott,
No. 03-99-00118-CV, 1999 Tex. App. LEXIS 5535 (Tex. App.--Austin 1999, no pet.). 

 On August 14, 2000, this Court began receiving threatening letters from Trove. The
letters continued despite an August 16, 2000, order by this Court prohibiting any further
communication of this kind from Trove. The specific basis for Trove's indictment in the instant case
was his letter of May 7, 2003, directed to two of the justices on the panel. In this letter, Trove
threatened the lives of the justices and their families.

 Trove admitted to writing and mailing the letter but pleaded not guilty to the offense
by reason of the affirmative defenses of duress and necessity. At trial, the State objected to Trove's
introducing evidence of alleged mistreatment as support for these defenses, arguing that any such
evidence was irrelevant unless Trove could show an imminent threat of death or serious bodily
injury. The trial court excluded the evidence. Over the State's objections, however, Trove testified
to mistreatment, "sufferings," and "torture." However, at the conclusion of trial, the court refused
to give the jury instructions to consider duress or necessity. The jury found Trove guilty of
retaliation, and the court sentenced him to twenty-five years in prison.

 On appeal, Trove complains of the trial court's ruling excluding evidence of his
alleged mistreatment. Further, he complains of the court's failure to instruct the jury on the
affirmative defenses of duress and necessity.


Exclusion of Evidence of Affirmative Defenses

 An appellate court reviews a trial court's decision to admit or exclude evidence for
abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on
reh'g). A trial court abuses its discretion only when its decision lies outside the zone of reasonable
disagreement. Id.

 To determine whether evidence was properly admitted or excluded, we first consider
whether the evidence is relevant. Relevant evidence is "evidence having any tendency to make
the existence of any fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence." Tex. R. Evid. 401. Courts must look at the
purpose for offering the evidence and whether there is a direct or logical connection between
the offered evidence and the proposition to be proved. Schier v. State, 60 S.W.3d 340, 343
(Tex. App.--Houston [14th Dist.] 2001, pet. ref'd).

 Trove argues that his proffered evidence should have been admitted because it
supports his affirmative defenses of duress and necessity. Through an offer of proof, Trove provided
the trial court a list of TDCJ witnesses who, according to Trove, were willing to testify to his
medical condition and mistreatment. In his offer of proof, Trove alleged that these witnesses would
have testified to the following:


 1. Trove's medical condition and special needs;


 2. The existence of medical orders requiring Trove's removal from the vicinity before
tear gas is used;


 3. Guards' knowledge of, but disregard for, these medical orders;


 4. Trove's confinement to a room with no ventilation, causing him to suffer heat stroke
and to be hospitalized;


 5. Trove's mistreatment generally;


 6. General conditions at the prison facility; and


 7. The consistent and frequent use of tear gas at the prison facility.

In addition, Trove claims that two TDCJ nurses would have testified that they had been providing
Trove with medication not documented in the medical records because he was not getting necessary
medical treatment.

 In light of Trove's admission to writing and mailing the May 7, 2003 letter, the
evidence proffered by Trove in his offer of proof is admissible only if it is relevant to the affirmative
defenses of duress and necessity. See id. Trove claims that he was compelled to write and mail the
threatening letter because of how he alleges he was being treated by the prison staff. Thus, in order
for the proffered evidence to be admissible, there must be a connection between Trove's allegations
of mistreatment and the elements of the affirmative defenses of duress and necessity.


Duress

 Duress requires that "the actor engaged in the proscribed conduct because he
was compelled to do so by threat of imminent death or serious bodily injury to himself or another." 
Tex. Penal Code Ann. § 8.05(a) (West 2003). None of the evidence proffered by Trove tends to
show that he was required to write threatening letters to this Court to avoid imminent death or
serious bodily injury. The fact that Trove alleges mistreatment at the hands of prison officials and
inmates--even if true--is not evidence that he was compelled to write threatening letters to judges
by threat of death or serious bodily injury. There is no logical connection between his allegations
of mistreatment as proffered and any compulsion to write the May 7, 2003 letter. The proffered
evidence was not relevant to Trove's duress defense and was properly excluded.

 Trove relies on Miller v. State to support his contention that the proffered evidence
should have been admitted as relevant to his duress defense. Miller v. State, 36 S.W.3d 503
(Tex. Crim. App. 2001). In Miller, the defendant was convicted of delivery of a controlled
substance. Id. at 504. On appeal, she challenged the trial court's exclusion of certain evidence
relating to her affirmative defense of duress. Id. According to the defendant, she sold cocaine to an
undercover officer because she was afraid that another man, James Magee, would harm her if she
did not. Id. at 505. The evidence in Miller showed that the defendant was, in fact, assaulted by
Magee after she delivered the cocaine. Id. The court concluded that the evidence was relevant to
her duress defense. Id. at 508. A reasonable jury could have found that the subsequent assault
shows that she was under duress from Magee, that she feared for her safety, and that her fear was
reasonable. Id.

 In Miller, the proffered evidence supported appellant's contention that if she did not
perform the act in question--delivery of the cocaine--she faced serious harm. The fact that she did,
indeed, suffer the harm following her performing the act was relevant to show duress. Here,
however, there is no evidence to show that Trove was ever threatened with serious bodily injury if
he did not perform the act in question--writing threatening letters to members of this Court.

 Trove emphasizes that, in Miller, the court admitted the proffered evidence without
regard to its weight or credibility. He argues that, likewise, he should be permitted to present his 
evidence to the jury and that the jury should determine its weight. Here, however, none of the
proffered evidence, even taken as true, tends to show that Trove was threatened with imminent death
or bodily injury if he failed to write the May 7, 2003 letter. None of the proffered evidence has any
direct or logical connection to the elements of duress.

 We conclude that the proffered evidence had no reasonable or logical connection to
Trove's duress defense. The evidence was not relevant to the defense and was properly excluded. 


Necessity

 Trove also contends that the trial court erred by refusing to admit evidence proffered
to support his affirmative defense of necessity. Necessity justifies conduct if:


 (1) the actor reasonably believes the conduct is immediately necessary to avoid
imminent harm;

 

 (2) the desirability and urgency of avoiding the harm clearly outweigh, according
to ordinary standards of reasonableness, the harm sought to be prevented by
the law proscribing the conduct; and

 

 (3) a legislative purpose to exclude the justification claimed for the conduct does
not otherwise plainly appear.



Tex. Penal Code Ann. § 9.22 (West 2003).

 First, to succeed on a defense of necessity, the contemplated harm must be imminent.
"Imminent" means that something is impending, not pending; something that is on the point of
happening, not about to happen. Schier, 60 S.W.3d at 343. Imminent harm contemplates an
emergency situation, requiring immediate action or a split-second decision without time to consider
the law. Id.

 Courts have found no imminent harm where there is no emergency situation and no
need for a split-second decision. In Stefanoff v. State, appellant, convicted of possessing marihuana,
claimed that it was necessary for him to possess and smoke marihuana to avoid sudden and severe
symptoms associated with post-traumatic stress disorder. 78 S.W.3d 496, 499 (Tex. App.--Austin
2002, pet. ref'd). The court found no imminent harm. In Schier and Smith v. State, the courts found
no imminent harm where appellants, convicted of interference with child custody, claimed that it was
necessary for them to remove their children from an abusive parent. 60 S.W.3d at 344; 949 S.W.2d
333, 336-37 (Tex. App.--Tyler 1996, pet. ref'd). In Anguish v. State, appellant, convicted of robbery
and theft of an automobile, claimed he stole the automobile and robbed the bank because of
another's threat four days earlier to kill his family if he did not perform the act. 991 S.W.2d
883, 884-85 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd). The court found no imminent harm. 
Finally, in Washington v. State, appellant, convicted for unlawfully possessing a firearm, claimed
that the gun was his grandfather's and that he had put it in his pocket so that the kids, who
were on their way home from school, would not see it or handle it. 152 S.W.3d 209, 211
(Tex. App.--Amarillo 2004, no pet.). The court found no imminent harm. Each of these decisions
shows that a general fear of harm, alone, is insufficient to invoke the necessity defense; rather, the
necessity defense requires imminent harm such that an immediate, non-deliberative action must be
made without hesitation or thought of the legal consequence. See Stefanoff, 78 S.W.3d at 501.

 Here, Trove sought to present evidence of general mistreatment by TDCJ officials
and by other inmates. For instance, Trove claims that one witness would testify to a past incident
in which Trove was confined to a room with no ventilation, causing him to suffer heat stroke and
to be hospitalized. Although such evidence may indicate past harm and even a present general fear
of harm, it fails to demonstrate an immediate need to act to prevent imminent harm. Trove also
sought to introduce evidence of his medical conditions and special needs. In particular, Trove claims
that the proffered evidence would show the existence of medical orders requiring his removal from
the vicinity before tear gas is used and the guards' knowledge of, but disregard for, these medical
orders. Trove claims that another witness would testify that tear gas is consistently and frequently
used at the prison facility. While such evidence might tend to show that Trove generally fears being
harmed or mistreated, it is not evidence of an imminent threat or an immediate need to write
threatening letters to members of this Court to avoid harm.

 In addition to a showing of imminent harm, the necessity defense requires that a
reasonable person would believe the conduct to be immediately necessary. "Reasonable belief"
means a belief that would be held by an ordinary and prudent person in the same circumstances
as the actor. Tex. Penal Code Ann. § 1.07(a)(42) (West Supp. 2006). Determination of the
reasonableness of an accused's belief is generally a question of fact, and should be viewed from the
accused's standpoint at the time he acted. Fitzgerald v. State, 782 S.W.2d 876, 885 (Tex. Crim.
App. 1990); Brazelton v. State, 947 S.W.2d 644, 648 (Tex. App.--Fort Worth 1997, no pet.). 
However, an accused's belief that the conduct was immediately necessary may be deemed
unreasonable as a matter of law if the evidence shows a complete lack of immediate necessity or
imminent harm. Brazelton, 947 S.W.2d at 648-49. As discussed above, Trove has presented no
evidence of imminent harm. Therefore, if Trove believed that writing threatening letters to members
of this Court was immediately necessary to avoid imminent harm, this belief was unreasonable as
a matter of law. See id.

 We conclude that the proffered evidence had no reasonable or logical connection to
Trove's necessity defense. There is no evidence of imminent harm or of a reasonable belief that
immediate action was necessary to avoid imminent harm. The proffered evidence was not relevant
to the defense and was properly excluded.


Failure to Instruct Jury on Affirmative Defenses

 Trove presented no evidence of either duress or necessity. When he testified, Trove
described mistreatment, "suffering," and "torture;" however, his testimony was essentially the same
as the excluded evidence already described. For the reasons discussed above, we conclude that the
evidence presented by Trove's testimony was no evidence of either duress or necessity requiring that
he write a letter threatening a judge. The evidence presented had no reasonable or logical connection
to either defense. Because Trove presented no evidence of either defense, the trial court properly
refused to instruct the jury to consider them.

 The points of error are overruled, and the judgment of conviction is affirmed.



 __________________________________________

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Pemberton 

Affirmed

Filed: November 14, 2007

Do Not Publish
1. Since Trove mailed the letter on May 7, 2003, this section of the Penal Code has been
amended; however, the portions relevant to Trove's conviction were unaffected. See Act of May 22,
2001, 77th Leg., R.S., ch. 835, § 1, 2001 Tex. Gen. Laws 1669, 1669.
2. A mastoidectomy is a surgical procedure to remove an infected portion of the bone behind
the ear.