# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00578-CR

Erik Trove, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. 9044129, HONORABLE JON N. WISSER, JUDGE PRESIDING

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Erik Trove of retaliation for mailing threatening letters to this Court. *See* Tex. Penal Code Ann. § 36.06 (West Supp. 2006).[1] He was sentenced to twenty-five years in prison. In two points of error, Trove contends that the trial court erred by excluding evidence that he claims supports his affirmative defenses of duress and necessity and by refusing to instruct the jury to consider these defenses. We conclude that there was no connection between the proffered evidence and the affirmative defenses of duress and necessity. The proffered evidence was properly excluded. We further conclude that, because there was no evidence to support the submission of either affirmative defense to the jury, the court properly refused to instruct the jury to consider them. We affirm the trial court's judgment.

---

[1] Since Trove mailed the letter on May 7, 2003, this section of the Penal Code has been amended; however, the portions relevant to Trove's conviction were unaffected. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 835, § 1, 2001 Tex. Gen. Laws 1669, 1669.

## Factual and Procedural Background

In 1983, Trove was convicted of murder and sentenced to thirty years in prison. He is serving his sentence in the French Robertson Unit in Abilene, Texas. Trove complains of mistreatment during his incarceration, both by Texas Department of Criminal Justice (TDCJ) officials and by other inmates. According to Trove, much of the mistreatment he suffers arises from the refusal of TDCJ officials to accommodate his need for modified treatment due to chronic medical conditions. Scar tissue resulting from a mastoidectomy[2] causes blood to clot in Trove's ear, which requires his ear canal to be evacuated every six months. Because of this condition, Trove's doctors have ordered that he not be subjected to blunt trauma to his head and that he should, therefore, be separated from gang members to protect him from gang violence. Trove testified that, despite his condition, he has suffered numerous attacks by guards and by other inmates. Trove also suffers from asthma. Prison doctors have ordered that he be removed from the area when tear gas is used to subdue prisoners in nearby cells. According to Trove, TDCJ officials ignore these orders.

When Trove went on a hunger strike in 1998, TDCJ officials force-fed him to keep him alive. Trove filed a civil lawsuit against Wayne Scott, then acting director of the TDCJ, requesting a temporary restraining order to prevent TDCJ from doing anything to prolong or save his life. The motion was denied by the trial judge. A panel of judges of this Court affirmed the trial court's decision to deny injunctive relief. The opinion was filed July 29, 1999. *See Trove v. Scott*, No. 03-99-00118-CV, 1999 Tex. App. LEXIS 5535 (Tex. App.—Austin 1999, no pet.).

---

[2] A mastoidectomy is a surgical procedure to remove an infected portion of the bone behind the ear.

2

On August 14, 2000, this Court began receiving threatening letters from Trove. The letters continued despite an August 16, 2000, order by this Court prohibiting any further communication of this kind from Trove. The specific basis for Trove's indictment in the instant case was his letter of May 7, 2003, directed to two of the justices on the panel. In this letter, Trove threatened the lives of the justices and their families.

Trove admitted to writing and mailing the letter but pleaded not guilty to the offense by reason of the affirmative defenses of duress and necessity. At trial, the State objected to Trove's introducing evidence of alleged mistreatment as support for these defenses, arguing that any such evidence was irrelevant unless Trove could show an imminent threat of death or serious bodily injury. The trial court excluded the evidence. Over the State's objections, however, Trove testified to mistreatment, "sufferings," and "torture." However, at the conclusion of trial, the court refused to give the jury instructions to consider duress or necessity. The jury found Trove guilty of retaliation, and the court sentenced him to twenty-five years in prison.

On appeal, Trove complains of the trial court's ruling excluding evidence of his alleged mistreatment. Further, he complains of the court's failure to instruct the jury on the affirmative defenses of duress and necessity.

### Exclusion of Evidence of Affirmative Defenses

An appellate court reviews a trial court's decision to admit or exclude evidence for abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion only when its decision lies outside the zone of reasonable disagreement. *Id.*

3

To determine whether evidence was properly admitted or excluded, we first consider whether the evidence is relevant. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Courts must look at the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition to be proved. *Schier v. State*, 60 S.W.3d 340, 343 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

Trove argues that his proffered evidence should have been admitted because it supports his affirmative defenses of duress and necessity. Through an offer of proof, Trove provided the trial court a list of TDCJ witnesses who, according to Trove, were willing to testify to his medical condition and mistreatment. In his offer of proof, Trove alleged that these witnesses would have testified to the following:

1.  Trove's medical condition and special needs;

2.  The existence of medical orders requiring Trove's removal from the vicinity before tear gas is used;

3.  Guards' knowledge of, but disregard for, these medical orders;

4.  Trove's confinement to a room with no ventilation, causing him to suffer heat stroke and to be hospitalized;

5.  Trove's mistreatment generally;

6.  General conditions at the prison facility; and

7.  The consistent and frequent use of tear gas at the prison facility.

In addition, Trove claims that two TDCJ nurses would have testified that they had been providing Trove with medication not documented in the medical records because he was not getting necessary medical treatment.

In light of Trove's admission to writing and mailing the May 7, 2003 letter, the evidence proffered by Trove in his offer of proof is admissible only if it is relevant to the affirmative defenses of duress and necessity. *See id.* Trove claims that he was compelled to write and mail the threatening letter because of how he alleges he was being treated by the prison staff. Thus, in order for the proffered evidence to be admissible, there must be a connection between Trove's allegations of mistreatment and the elements of the affirmative defenses of duress and necessity.

### *Duress*

Duress requires that "the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." Tex. Penal Code Ann. § 8.05(a) (West 2003). None of the evidence proffered by Trove tends to show that he was required to write threatening letters to this Court to avoid imminent death or serious bodily injury. The fact that Trove alleges mistreatment at the hands of prison officials and inmates—even if true—is not evidence that he was compelled to write threatening letters to judges by threat of death or serious bodily injury. There is no logical connection between his allegations of mistreatment as proffered and any compulsion to write the May 7, 2003 letter. The proffered evidence was not relevant to Trove's duress defense and was properly excluded.

Trove relies on *Miller v. State* to support his contention that the proffered evidence should have been admitted as relevant to his duress defense. *Miller v. State*, 36 S.W.3d 503

5

(Tex. Crim. App. 2001). In *Miller*, the defendant was convicted of delivery of a controlled substance. *Id.* at 504. On appeal, she challenged the trial court's exclusion of certain evidence relating to her affirmative defense of duress. *Id.* According to the defendant, she sold cocaine to an undercover officer because she was afraid that another man, James Magee, would harm her if she did not. *Id.* at 505. The evidence in *Miller* showed that the defendant was, in fact, assaulted by Magee after she delivered the cocaine. *Id.* The court concluded that the evidence was relevant to her duress defense. *Id.* at 508. A reasonable jury could have found that the subsequent assault shows that she was under duress from Magee, that she feared for her safety, and that her fear was reasonable. *Id.*

In *Miller*, the proffered evidence supported appellant's contention that if she did not perform the act in question—delivery of the cocaine—she faced serious harm. The fact that she did, indeed, suffer the harm following her performing the act was relevant to show duress. Here, however, there is no evidence to show that Trove was ever threatened with serious bodily injury if he did not perform the act in question—writing threatening letters to members of this Court.

Trove emphasizes that, in *Miller*, the court admitted the proffered evidence without regard to its weight or credibility. He argues that, likewise, he should be permitted to present his evidence to the jury and that the jury should determine its weight. Here, however, none of the proffered evidence, even taken as true, tends to show that Trove was threatened with imminent death or bodily injury if he failed to write the May 7, 2003 letter. None of the proffered evidence has any direct or logical connection to the elements of duress.

6

We conclude that the proffered evidence had no reasonable or logical connection to Trove's duress defense. The evidence was not relevant to the defense and was properly excluded.

*Necessity*

Trove also contends that the trial court erred by refusing to admit evidence proffered to support his affirmative defense of necessity. Necessity justifies conduct if:

(1)     the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2)     the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3)     a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex. Penal Code Ann. § 9.22 (West 2003).

First, to succeed on a defense of necessity, the contemplated harm must be imminent. "Imminent" means that something is impending, not pending; something that is on the point of happening, not about to happen. *Schier*, 60 S.W.3d at 343. Imminent harm contemplates an emergency situation, requiring immediate action or a split-second decision without time to consider the law. *Id.*

Courts have found no imminent harm where there is no emergency situation and no need for a split-second decision. In *Stefanoff v. State*, appellant, convicted of possessing marihuana, claimed that it was necessary for him to possess and smoke marihuana to avoid sudden and severe symptoms associated with post-traumatic stress disorder. 78 S.W.3d 496, 499 (Tex. App.—Austin

7

2002, pet. ref'd).  The court found no imminent harm.  In *Schier* and *Smith v. State*, the courts found no imminent harm where appellants, convicted of interference with child custody, claimed that it was necessary for them to remove their children from an abusive parent.  60 S.W.3d at 344; 949 S.W.2d 333, 336-37 (Tex. App.—Tyler 1996, pet. ref'd).  In *Anguish v. State*, appellant, convicted of robbery and theft of an automobile, claimed he stole the automobile and robbed the bank because of another's threat four days earlier to kill his family if he did not perform the act.  991 S.W.2d 883, 884-85 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).  The court found no imminent harm. Finally, in *Washington v. State*, appellant, convicted for unlawfully possessing a firearm, claimed that the gun was his grandfather's and that he had put it in his pocket so that the kids, who were on their way home from school, would not see it or handle it.  152 S.W.3d 209, 211 (Tex. App.—Amarillo 2004, no pet.).  The court found no imminent harm.  Each of these decisions shows that a general fear of harm, alone, is insufficient to invoke the necessity defense; rather, the necessity defense requires imminent harm such that an immediate, non-deliberative action must be made without hesitation or thought of the legal consequence.  *See Stefanoff*, 78 S.W.3d at 501.

Here, Trove sought to present evidence of general mistreatment by TDCJ officials and by other inmates.  For instance, Trove claims that one witness would testify to a past incident in which Trove was confined to a room with no ventilation, causing him to suffer heat stroke and to be hospitalized.  Although such evidence may indicate past harm and even a present general fear of harm, it fails to demonstrate an immediate need to act to prevent imminent harm.  Trove also sought to introduce evidence of his medical conditions and special needs.  In particular, Trove claims that the proffered evidence would show the existence of medical orders requiring his removal from

8

the vicinity before tear gas is used and the guards' knowledge of, but disregard for, these medical orders. Trove claims that another witness would testify that tear gas is consistently and frequently used at the prison facility. While such evidence might tend to show that Trove generally fears being harmed or mistreated, it is not evidence of an imminent threat or an immediate need to write threatening letters to members of this Court to avoid harm.

In addition to a showing of imminent harm, the necessity defense requires that a reasonable person would believe the conduct to be immediately necessary. "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. Tex. Penal Code Ann. § 1.07(a)(42) (West Supp. 2006). Determination of the reasonableness of an accused's belief is generally a question of fact, and should be viewed from the accused's standpoint at the time he acted. *Fitzgerald v. State*, 782 S.W.2d 876, 885 (Tex. Crim. App. 1990); *Brazelton v. State*, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.). However, an accused's belief that the conduct was immediately necessary may be deemed unreasonable as a matter of law if the evidence shows a complete lack of immediate necessity or imminent harm. *Brazelton*, 947 S.W.2d at 648-49. As discussed above, Trove has presented no evidence of imminent harm. Therefore, if Trove believed that writing threatening letters to members of this Court was immediately necessary to avoid imminent harm, this belief was unreasonable as a matter of law. *See id.*

We conclude that the proffered evidence had no reasonable or logical connection to Trove's necessity defense. There is no evidence of imminent harm or of a reasonable belief that

immediate action was necessary to avoid imminent harm. The proffered evidence was not relevant to the defense and was properly excluded.

### Failure to Instruct Jury on Affirmative Defenses

Trove presented no evidence of either duress or necessity. When he testified, Trove described mistreatment, "suffering," and "torture;" however, his testimony was essentially the same as the excluded evidence already described. For the reasons discussed above, we conclude that the evidence presented by Trove's testimony was no evidence of either duress or necessity requiring that he write a letter threatening a judge. The evidence presented had no reasonable or logical connection to either defense. Because Trove presented no evidence of either defense, the trial court properly refused to instruct the jury to consider them.

The points of error are overruled, and the judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: November 14, 2007

Do Not Publish

10