

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### AP-75,604

### JUAN RAMON MEZA SEGUNDO, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL
### FROM BEXAR COUNTY

PRICE, J., filed a concurring opinion in which MEYERS and HOLCOMB, JJ., joined.

### CONCURRING OPINION

I agree that it is a close question whether the extraneous offense should have been admitted in this case. The close question is not, in my view, whether the extraneous offense is relevant (apart from inferences of character-conformity) to an issue in the case. To me, the much closer question is whether the evidence was substantially more prejudicial than probative. On the particular facts of this case, however, the trial court was justified in concluding that the extraneous offense evidence was not substantially more prejudicial than

probative, and therefore acted within its discretion to admit it under Rule 403 of the Texas Rules of Evidence.[1]

The appellant argues that there are insufficient similarities between the charged offense and the extraneous offense to establish *modus operandi*, which is typically thought to be required before an extraneous offense may be admitted to show identity under Rule 404(b) of the Rules of Evidence.[2] The Court today quite correctly rejects this argument on the peculiar facts of this case. The appellant does not challenge his identity as the person who sexually assaulted the victim. He simply argues that under the State's evidence it is possible that *after* he sexually assaulted her, someone else may have been the one to murder her. Under this scenario, the relevance of the extraneous offense to the charged crime does not reside in the similarities between the two offenses, to show the appellant's overall complicity in the charged crime. Instead, the relevance resides in the tendency of the extraneous offense to prove that the appellant did not simply sexually assault the victim of the charged offense, but that he killed her as well.

Evidence that on other occasions the appellant has sexually assaulted *and murdered* other victims tends to show that the appellant did not just sexually assault the instant victim,

---

[1] *See* TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .").

[2] *See* TEX. R. EVID. 404(b) ("Evidence of other crimes . . . is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]").

but that he murdered her, too. And the more victims the appellant has sexually assaulted who have also turned up dead, the greater the probability (utilizing inferences having nothing to do with character-conformity) that the appellant does not typically leave his sexual assault victims alive. As the Court rightly observes, the kind of similarities we usually look for to establish *modus operandi*, and hence identity, are simply unnecessary to establish the operative inference in this case—that appellant raped *and killed* the victim of the charged offense. Indeed, that being the operative inference, one must wonder why the trial court did not see fit to admit *both* extraneous offenses proffered by the State in this case. After all, the more often DNA evidence shows that the appellant has committed sexual assault, and those victims have also turned up dead, the greater the likelihood that the appellant was responsible, not just for the assaults, but for the killings, too.

Also on the peculiar facts of this case, it seems that the State's *need* for the extraneous offense evidence is not that pressing.[3] The victim was left alone for only an hour, and the medical examiner testified that the rape and murder were contemporaneous. It seems highly unlikely that the appellant would have come through the window, sexually assaulted the victim, and left, only to have some unidentified and non-complicit third party follow the appellant through the window later within that same hour and murder her. The State did not

---

[3] *See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g) ("how great is the proponent's '*need*' for the extraneous transaction? This . . . inquiry breaks down into three subparts: Does the proponent have other available evidence to establish the fact of consequence that the extraneous misconduct is relevant to show? If so, how strong is that other evidence? And is the fact of consequence related to an issue that is in dispute?").

have a particularly compelling need for the extraneous offense evidence to establish that the appellant was the murdered.[4]  Moreover, the extraneous offense is of a sensational nature, suggesting a potential to impress the jury in an irrational and indelible way.[5]  A more than plausible argument can be made, under these circumstances, that evidence of the extraneous offense was substantially more prejudicial than probative, and hence inadmissible under Rule 403.  Nevertheless, given the substantial efforts of the defense to argue that the State's evidence did not establish that the appellant both raped *and murdered* the victim, I reluctantly agree that the trial court did not abuse its substantial discretion (did not, that is, depart from the "zone of reasonable disagreement"[6]) to admit evidence of the extraneous offense.  With these observations, I join the Court's opinion.

Filed:  October 29, 2008
Publish

---

[4]

Indeed, the Court finds that, under the State's evidence, it would not have been rational for the jury to find that the same perpetrator did not both rape and kill the victim and holds that the appellant was therefore not entitled to any of his requested lesser-included-offense jury instructions. Majority opinion at 17.

[5]

*Id*.  ("Another obvious factor is the potential the 'other crimes, wrongs, or acts' have to impress the jury in some irrational but nevertheless indelible way.  This is often a function of the nature of the misconduct.").

[6]

*Id*. at 391.