NO. 07-08-0101-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 30, 2009
_____

GEORGE DEMPSY NORWOOD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 106TH DISTRICT COURT OF LYNN COUNTY;

NO. 06-2835; HONORABLE CARTER T. SCHILDKNECHT, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, George Dempsy Norwood, appeals the trial court's judgment convicting him of indecency with a child and subsequently sentencing him to seven years incarceration in the Institutional Division of the Texas Department of Criminal Justice.[1] It is from this judgment and sentence that appellant appeals. We affirm.

---

[1] See TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2003).

## Factual and Procedural Background

Appellant does not contest the legal or factual sufficiency of the evidence to sustain his conviction, therefore, we will only discuss those factual elements that are germane to our opinion. On May 8, 2007, Keiva Norwood, appellant's biological granddaughter and adopted daughter, reported to the Tahoka Police Department that appellant both attempted to engage in intercourse with her on one occasion and had, on other occasions, inappropriately touched her. These incidents occurred in 2001 and 2003 when Keiva was a minor and living in the home of appellant. As a result of the allegations made by Keiva, appellant was contacted by Chief Dorsey of the Tahoka Police Department and asked to come in and speak to him about the allegations.

On or about the same day that Keiva made her allegation of improper conduct against appellant, appellant filed for divorce from Mae Dawn Norwood. It became the contention of appellant's attorneys that the allegations against appellant were instigated as part of the effort of Mae Dawn to acquire most, if not all, of appellant's and Mae Dawn's community property.

Appellant's primary contention regarding the challenged extraneous offense evidence is that, while those offenses might have some relevance to the proceedings appellant was being tried for, the State had forced appellant's trial counsel to raise the issue of the divorce through the State's opening statement. During opening statements, the State's attorney made the following reference to the divorce proceeding,

2

> Now, what I don't expect you to hear is– Mae Dawn Norwood didn't call the police. I'll tell you that up front. And she should have. And the sad fact is, if it wasn't for the fact that they got a divorce, she would be sitting on his side of the courtroom right now, because she didn't do anything to stop this.

According to appellant, this forced his counsel to counter the issue of the divorce. Appellant's trial counsel referred to Mae Dawn's motive for lying on at least two occasions in her opening statement and talked about the motive for filing the charges against appellant throughout the opening statement.

Keiva testified about the facts relating to the charges against appellant. During cross-examination, she denied making these allegations as part of a plot to make sure that Mae Dawn received most, if not all, of the community property during her divorce from appellant. Keiva testified that the improper touching of her breasts occurred while appellant was giving her a back rub. According to Keiva, appellant reached under her and began fondling her breasts. As the fondling was occurring, Mae Dawn happened to come into the bedroom. Mae Dawn testified that she came into the bedroom and caught appellant in the act of fondling Keiva's breasts. During cross-examination, Mae Dawn admitted she did not report this to the police.

Chief Dorsey then testified about his interviews with appellant. Appellant testified that he had attempted to discuss these allegations with the police department earlier. Dorsey testified that the first time appellant came forward was when Dorsey called appellant. Dorsey testified that, during his interview with appellant, appellant stated that the allegation regarding his touching of Keiva's breasts was not true. Appellant stated that

3

he may have come close to her breasts or have accidentally brushed a breast while giving her a back rub.

After Kevia, Mae Dawn, and Chief Dorsey testified, the State advised the trial court that it wished to call two witnesses to testify about extraneous offenses of a like nature to those appellant was being tried for. The two witnesses were Rebecca Aguero, appellant's stepdaughter, and Rosale Bohannon, appellant's biological daughter. During a hearing about the admissibility of the testimony, the State opined that the testimony should come in to prove the issue of intent and to rebut appellant's defensive theory that the allegations are an attempt by Kevia to assist Mae Dawn in getting most of the community property through the divorce. The trial court ruled that the evidence was relevant and more probative than prejudicial. Accordingly, the trial court ruled that the testimony would be allowed.

Both witnesses testified to improper sexual conduct by appellant when each was a young girl. In both instances, the alleged improper sexual conduct occurred approximately 30 years earlier.

Appellant testified in his own behalf. During his cross-examination testimony, appellant stated that, if he had contact with the breast of Keiva, it occurred while he was giving her a back rub and the contact was accidental and totally unintentional. Further, during cross-examination, appellant seemed to alternate between saying the incidents of extraneous conduct either did not occur or that he could not remember the incidents.

4

Appellant was tried under an indictment that included one count of attempted sexual assault and two counts of indecency with a child. At the close of the State's case-in-chief, the trial court granted a directed verdict as to the attempted sexual assault of a child count. The jury subsequently acquitted appellant of Count 3 of the indictment, indecency with a child, and convicted appellant of Count 2 of the indictment, also alleging indecency with a child. Count 2 was the count that involved the touching of the breasts of Keiva. The jury subsequently assessed appellant's sentence at confinement in the Institutional Division of the Texas Department of Criminal Justice for seven years.

Appellant contends that the trial court abused its discretion and committed reversible error by: 1) allowing evidence of extraneous offenses to be placed before the jury when such evidence proved nothing except character conformance and, 2) finding that the extraneous offense evidence was not substantially more prejudicial than probative in contravention of Rule 403 of the Texas Rules of Evidence.[2] See TEX. R. EVID. 403.[3] Disagreeing with appellant's contentions, we affirm.

Standard of Review

We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard. See Cameron v. State, 241 S.W.3d 15, 19 (Tex.Crim.App.

---

[2] Additionally, appellant alleged in his brief, under the section titled Appellant's Points of Error, that the trial court erred in not conducting a hearing on appellant's motion for new trial. However, that issue was not addressed in the body of the brief and is, thereby, waived for insufficient briefing. See TEX. R. APP. P. 38.1(I).

[3] Further reference to the Texas Rules of Evidence will be by reference to "Rule ___."

2007).  Because trial courts are in the best position to decide questions of admissibility, appellate courts will uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement.  Id.  An appellate court may not reverse a trial court's decision regarding the admissibility of evidence solely because the appellate court disagrees with the decision.  Id.  A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement.  See Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

Texas Rules of Evidence 404(b) Objection

By his first issue, appellant complains that the trial court improperly allowed the introduction of evidence regarding extraneous offenses.  The trial court allowed Rebecca Aguero, appellant's stepdaughter, and Rosale Bohannon, appellant's daughter, to testify about incidents of sexual misconduct on the part of appellant with each of them that had occurred approximately 30 years before.  Appellant contends that the evidence was not admissible because the State initially made assertions regarding the nature of the evidence involved in the present case that required appellant's counsel to answer those statements. Therefore, according to appellant, he did not open the door for the admission of evidence of extraneous offenses.

Initially, we observe that, according to the rules of evidence, evidence of other crimes, wrongs, or acts that do not have relevance apart from character conformity is inadmissible.  See Rule 404(b).  However, evidence of extraneous offenses is not inadmissible if it is relevant to a fact of consequence apart from the tendency to show

6

conduct in conformity with character. See Casey v. State, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007). Further, evidence of extraneous offenses is not inadmissible under Rule 404(b) when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime. Id.

The record reveals that the State made a passing reference to the divorce proceeding between appellant and Mae Dawn in its opening statement. The reference was directed to the reason Mae Dawn had not initially reported what she saw on the day she found appellant giving a back rub to Keiva. The State opined that it was because she was married to appellant. The State's attorney ended his reference to the divorce by stating that Mae Dawn's failure to report the incident was inexcusable. Subsequently, in the appellant's opening statement, trial counsel stated:

> I think what the evidence is going to show you is that Mae Dawn has a motive to lie in this case, that she had a motive to bring these allegations, and that she talked Keiva into bringing these allegations against my client, George Norwood.

Trial counsel subsequently stated that the evidence in the case is "layer after layer after layer of lies and lies." Trial counsel then proceeded to tell the jury that the evidence would show that appellant let it be known, on May 1, 2006, that he intended to file for divorce against Mae Dawn. Trial counsel went on to advise that, within days of finding out appellant intended to file for divorce, his biological daughter and his wife filed the police report that led to the indictment of appellant. Trial counsel then asked the question, "Why?" And answered the question, "Leverage in a divorce, maybe."

7

From the record before us, it is apparent that appellant's opening statement was setting forth his theory of defense. Specifically, that Mae Dawn and Keiva were fabricating these allegations in order for Mae Dawn to gain an advantage in the divorce proceedings. As noted by the Court of Criminal Appeals in the recent case of Bass v. State, a defense opening statement may open the door to the admission of extraneous offense evidence. See Bass v. State, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008) (In Bass, immediately after the State's opening statement, the defense made an opening statement in which it claimed that the complainant's allegations were "pure fantasy" and "pure fabrication," which led to the State being allowed to introduce evidence of two other extraneous offenses during the State's case-in-chief.). As the Court pointed out, "When, as here, the defense chooses to make its opening statement immediately after the State's opening statement, the State may reasonably rely on this defensive opening statement as to what evidence the defense intends to present and rebut this anticipated defensive evidence during its case-in-chief as opposed to waiting until rebuttal. Id. at n.7. It is apparent from the record that the State was, in fact, reasonably relying on the evidence that the defense intended to produce. Accordingly, we hold that the trial court did not err in admitting the evidence of the extraneous offenses under Rule 404(b). Id. However, this does not end our inquiry as appellant also objected on the basis of Rule 403. See Rule 403.

Texas Rules of Evidence 403 Objection

At the same time appellant objected to the admission of the extraneous offense evidence under Rule 404(b), he also objected that, if the evidence was otherwise relevant, the probative value of the evidence was far outweighed by the unfair prejudicial impact.

8

However, appellant now contends that the admission of the extraneous offense evidence violates Rule 401 in that it is not relevant, due to the age of the alleged extraneous offenses, 30 years. Further, appellant contends that the danger of unfair prejudice far outweighs the probative value of this evidence. As a result of these two contentions, appellant insists that the trial court committed reversible error in admitting the extraneous offense evidence.

In reviewing the objection that appellant lodged against the extraneous offense evidence, we do not find where appellant brought the issue of relevancy, pursuant to Rule 401, to the attention of the trial court. At best, all we can say is that appellant made a passing reference to the issue while arguing his Rule 404(b) objection. However, rather than rule the issue has been waived for failure to preserve, we shall address the issue. See TEX. R. APP. P. 33.1(a)(1)(A).

Under the Texas Rules of Evidence, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. See Rule 401; Watterson v. State, No. 07-07-0153-CR, 2009 Tex.App. LEXIS 2938, at *7 (Tex.App.–Amarillo April 29, 2009, no pet.) (mem. op. not designated for publication) (citing Moses v. State, 105 S.W.3d 622, 625 (Tex.Crim.App. 2003)). As explained above, the evidence of the extraneous offenses became relevant to combat the defensive theory of fabrication by Mae Dawn and Keiva in order to secure for Mae Dawn a more favorable divorce settlement. Further, the evidence was relevant to combat appellant's claim that the contact was not intentional or was the result of an accident. See Rule 404(b).

9

Having determined that the evidence was relevant, we next turn to ascertaining whether the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. See Rule 403. As in the Rule 404(b) arena, we will again apply an abuse of discretion standard in analyzing the trial court's decision to admit this evidence over a Rule 403 objection. See Montgomery, 810 S.W.2d at 391. In conducting the balancing test regarding admissibility, the trial court must balance 1) the inherent probative force of the proffered item of evidence along with 2) the proponent's need for that evidence against 3) any tendency of the evidence to suggest decision on an improper basis, 4) any tendency of the evidence to confuse or distract the jury from the main issue, 5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and 6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. See Casey, 215 S.W.3d at 880.

Having reviewed the record, we find that the evidence in question is strongly probative to rebut the appellant's contention that the alleged offense was fabricated by Mae Dawn and Keiva. Further, it is probative to rebut the statements by appellant that if he did, in fact, touch Keiva's breasts, he did so accidentally. The State, as proponent of the evidence, needed this evidence to rebut the fabrication theory of appellant. This was virtually the only evidence that the State had that placed the defensive theory in doubt. It must, however, be conceded that this evidence did have a tendency to suggest conviction on an improper basis because the very nature of the extraneous offenses could lead to a suggestion that, if appellant had done it before, he must have done it this time. However,

10

the record reflects that the jury was properly charged about their consideration of this evidence. This charge focused the jury on the proper consideration of the extraneous offense evidence. Finally, the presentation of the extraneous offense evidence took only a minimal amount of time and did not involve repeating evidence that had previously been admitted. When all of these factors are viewed in toto, we find no abuse of discretion in overruling appellant's Rule 403 objection. <u>Montgomery</u>, 810 S.W.2d at 391. Therefore, appellant's second issue is overruled.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.

Mackey K. Hancock
Justice

Do not publish.